**$11,014.00, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–90–00676–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 16, 1992.

Herbert Gee, Houston, for appellant.

John B. Holms, Dist. Atty., Don Clemmer, Asst., Houston, for appellee.

## OPINION ON REMAND FROM THE TEXAS SUPREME COURT

DUNN, Justice.

This is an appeal from a judgment of forfeiture. The trial court ordered $11,014, owned by Willard Wayne Wilks, forfeited to the Harris County District Attorney's Office.

In an opinion issued on April 25, 1991, we sustained appellant's first point of error, which asserted that there was no evidence to support the trial court's judgment, and reversed the judgment of the trial court.

*$11,014.00 v. State,* 808 S.W.2d 288 (Tex. App.—Houston [1st Dist.] 1991). On application for writ of error, the Texas Supreme Court reversed our judgment and remanded the cause to this Court for consideration of appellant's two remaining points of error. *State v. $11,400.00 and Willard Wilks,* 820 S.W.2d 783, 785 (Tex.1991). We will now consider the merits of appellant's second and third points of error.

The second point of error asserts that the evidence was factually insufficient to support the trial court's judgment.

R.L. Slay, an officer with the airport detail of the Narcotics Division of the Houston Police Department, testified that he was working at Hobby Airport on July 19, 1987. Slay saw Wilks deplaning a Continental flight from New York City. Slay stated that the flight was one frequently used by people transporting narcotics, and Wilks fit the general profile of someone transporting narcotics. When he deplaned, Wilks stepped to one side of the other passengers and looked around. Wilks then walked toward the baggage claim area. He seemed extremely nervous and kept glancing over his shoulder. He was carrying one bag, which Slay stated seemed to be extremely light. In Slay's experience, the light bag indicated Wilks was going to pick up a load of marijuana or was carrying a large amount of money to purchase narcotics.

Slay and an immigration agent followed Wilks. Slay asked Wilks if he could speak to him, and Wilks agreed but appeared extremely nervous. Wilks told Slay that although he had just arrived on the flight from New York, he did not have a ticket. Slay asserted that since most drug traffickers fly under assumed names, they leave their tickets on the airplane.

Wilks then admitted he was from Jamaica, but he did not have his immigration papers with him. The immigration agent placed Wilks under arrest, and the agent and Slay took Wilks to the airport police room. When the officers asked Wilks to empty his pockets, he produced a large bundle of cash wrapped with a rubber band. Slay asked Wilks if he was carrying any more cash, and Wilks admitted he was carrying more in his suitcase.

When Slay opened the suitcase, he found it was not full; in fact, it only contained three or four articles of clothing and four or five large bed sheets. Two large bundles of cash were wrapped in the sheets. According to Slay, marihuana transported out of Houston is usually wrapped in bed sheets or blankets. Wilks told Slay the money was to be used to buy a used van.

Slay placed the cash back in the suitcase, hid the suitcase in the room, and called for a narcotics detection dog. The dog searched the room and "alerted" on the suitcase. Slay stated that when the dog "alerted" on the suitcase, the dog was indicating he smelled narcotics in the suitcase. The dog was then taken out of the room, and the money was taken out of the suitcase and hidden in the room. When the dog was brought back in, it located where the money was hidden. Slay seized the money because he believed the money was to be used to buy marihuana.

On cross-examination, Slay admitted that he never observed Wilks attempt to buy or sell any narcotics. No narcotics were found on Wilks or in his possession. Furthermore, Slay admitted that no further tests were performed on the money to definitely establish whether any narcotics residue was present on the bills.

Wilks testified that after he got off the flight, he was stopped by immigration agents. When they asked him for his ticket, he told them he did not have it because his sister-in-law had it. He was then arrested by the immigration agents. They took him to a room where they asked how much money he had. Wilks claimed he told them he had $11,017.96; they returned $3.96 to him because it was change. Wilks confirmed that a dog was brought into the room, but denied that it "alerted" to the suitcase or any other area where the money was located. The officers then told Wilks they were keeping the money for forfeiture. Wilks denied that the money was to be used to purchase narcotics; he stated that it was to be used to purchase a used van.

On cross-examination, Wilks asserted that he had borrowed the money from relatives and had come to Houston to buy a van because he believed he could get a van in better condition, with less mileage, and at a better price than he could in New York. He claimed that he had talked to a friend, who lived in Houston, about buying the van. Wilks stated that his friend's name was Vincent, but he could not remember his last name. In addition, while Wilks did know the general area where Vincent lived, he did not know his address.

The trial court entered judgment that the $11,014 be forfeited to the Harris County District Attorney's Office. The trial court found that the money was derived from the illegal delivery of a controlled substance and intended for use in violation of the law in effect at the time, TEX.REV.CIV.STAT. ANN. art. 4476–15, § 4.052(a) (hereinafter referred to as "§ 4.052(a)").[1] Thus, the $11,014 was subject to forfeiture under TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.03(a)(6) (hereinafter referred to as "§ 5.03(a)(6)").[2]

▪ In reaching a decision regarding a factual sufficiency point of error, an appellate court must examine all of the evidence; and, after considering and weighing all the evidence, it should set aside the judgment only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

▪ Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. § 5.03(a)(6). The State has the burden to show probable cause for seizing a person's money. *$56,-700 v. State*, 730 S.W.2d 659, 661 (Tex. 1987). The State must show a reasonable belief that there is a substantial connection between the money and criminal activity. *Id.* The State must prove, by a preponderance of the evidence, that the money was, more likely than not, derived from or intended for use in the manufacture, delivery, sale, or possession of a controlled substance. *Valles v. State*, 646 S.W.2d 636, 638 (Tex.App.—Houston [1st Dist.] 1983, no writ). The State must do more than raise a mere surmise or suspicion concerning the source or intended use of the money. *Id.*

▪ There is no direct evidence that the $11,014 taken from Wilks was derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. *See Henderson v. State*, 669 S.W.2d 385, 387 (Tex.App.—San Antonio 1984, no writ) (no direct evidence established money was derived from the sale of methamphetamines when officer admitted he did not see any exchange of narcotics for money and no narcotics were found with the money). Slay admitted that he did not observe Wilks attempt to buy or sell any narcotics, nor were any narcotics found in Wilks' possession. Because there is no direct evidence linking the money to manufacturing, delivering, selling, or possessing a controlled substance, the State must produce sufficient circumstantial evidence to meet its burden of proof. *One 1984 Ford v. State*, 698 S.W.2d 279, 285 (Tex.App.— Fort Worth 1985, no writ); *Henderson*, 669 S.W.2d at 387.

▪ Slay testified that Wilks fit the general profile of a drug trafficker. The money was found wrapped in bed sheets, which Slay claimed were commonly used in transporting narcotics out of Houston. In addition, a narcotics detection dog "alerted" on

---

1. Act of June 17, 1983, 68th Leg., R.S., ch. 425, § 15, 1983 Tex.Gen.Laws 2391, *repealed by and codified in* Act of June 14, 1989, 71st Leg., R.S., ch. 678, §§ 1, 13(1), 1989 Tex.Gen.Laws 2230, 2941, 3165 (current version at TEX. HEALTH & SAFETY CODE ANN. § 481.126(a) (Vernon Pamph.1992)).

2. Act of June 3, 1985, 69th Leg., R.S., ch. 227, § 11, 1985 Tex.Gen.Laws 1123, 1124, *repealed by* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 13(1), 1989 Tex.Gen.Laws 3165 *and codified in* Act of August 2, 1989, 71st Leg., C.S, ch. 12, § 1, 1989 Tex.Gen.Laws 14, 14 (current version at TEX.CODE CRIM.P.ANN. art. 59.01(2)(B)(i) (Vernon Supp.1992)).

the money indicating narcotics residue may have been present on the money.

Although the foregoing constitutes "some evidence" that the money was actually derived from the sale and/or distribution of a controlled substance, we find that this evidence is factually insufficient to support the trial court's judgment. Wilks testified that the narcotics detection dog did not "alert" on either the money or his suitcase. Slay admitted that no lab tests were performed on the money to definitely establish whether any narcotics residue was present on the money. Wilks testified that he intended to use the money to purchase a used van. Wilks further testified that he had borrowed the money from relatives, who had given him most of the funds shortly before his trip to Houston. The State offered no evidence to the contrary.

Any presumption that may have arisen that the money was derived from the sale or distribution of illegal drugs was rebutted by the foregoing testimony. Here, there is circumstantial evidence giving rise to inferences that are equally consistent with the proposition that Wilks was a purchaser and/or user of drugs. "When circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred." *$56,700*, 730 S.W.2d at 662. Therefore, the required link between the money and an enumerated offense is lacking, so that there is insufficient evidence to support the proposition that the money was derived or had its origin in the sale and/or commercial distribution of a controlled substance. *See $56,700*, 730 S.W.2d at 661–62 (even though money was found in safe with cocaine, no link between money and offense was established when owner supplied alternate explanation for money); *$2,067, Three Handguns, and 51 Capsules v. State*, 745 S.W.2d 109, 111 (Tex.App.—Fort Worth 1988, no writ) (fact that property was found at, or near, controlled substance does not establish link between property and violation of law).

The second point of error is sustained.

Due to the disposition of the second point of error, we do not address the third point of error.

The judgment of forfeiture is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

SAM BASS, J., also participating.