**TWENTY–FOUR THOUSAND ONE HUNDRED AND EIGHTY ($24,180.00) DOLLARS IN UNITED STATES CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–92–510–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1993.

Rehearing Overruled Oct. 7, 1993.

Joseph A. Connors, III, McAllen, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Rene Guerra, Dist. & County Atty., Cynthia A. Morales, Asst. Crim. Dist. Atty., Edinburg, for appellee.

Before GILBERTO HINOJOSA and DORSEY, JJ., and NYE,[1] J. (Retired).

## OPINION

GILBERTO HINOJOSA, Justice.

The $24,180 in U.S. currency which is the subject of this suit was forfeited to the Hidalgo County District Attorney's Office after the trial court found that the currency was used or intended to be used by its owner, Lawrence Baker Weeks, in the commission of the felony of illegal investment. We affirm the trial court's ruling.

Two police officers assigned to the Drug Task Force for the County of Hidalgo assumed undercover roles as marihuana sellers after the Force received information from a confidential informant that prospective buyers wished to purchase sixty pounds of marihuana. The informant arranged the transaction and on May 27, 1991, met the undercover officers at the Sundeck Motel in Pharr, Texas, to wait for the buyers.

Approximately ten minutes later, Weeks and Guillermo Mendoza arrived. Apparently acting on behalf of Weeks and himself, Mendoza got out of the car and negotiated a drug transaction with one of the undercover officers. All negotiations were between Mendoza and the officer. Weeks remained in the car.

According to the officer's testimony, the agreement was that Weeks and Mendoza would purchase sixty pounds of marihuana for $600 a pound. The officer testified during cross-examination that the agreement was that Mendoza and Weeks would provide part of the purchase price, then the officer would meet them later to give them the sixty pounds of marihuana and collect the remainder of the purchase price. Mendoza never indicated during negotiations that he wanted less than sixty pounds and, in fact, indicated to the officer that he had "the money."

Mendoza asked for and was given a sample of the marihuana. When the undercover of-

---

1. Former Chief Justice, retired April 30, 1993.

ficer asked for the money, Mendoza returned to his car and had an inaudible conversation with Weeks. At that time, Weeks exited the car, removed a paper bag from the trunk and gave it to Mendoza. Mendoza walked back to the undercover officer and showed him the money in the bag. The officer gave a prearranged signal and surveillance officers arrested Weeks, Mendoza, and the informant, and seized the money in the paper bag.

The money consisted of small denominations of currency amounting to $24,180. It was wrapped with rubber bands in small bundles. One of the undercover officers testified that bundling money in small denominations indicated that the money was used by drug dealers to purchase drugs.

The officer who negotiated the drug transaction with Mendoza testified that he did not extend credit or barter and that, at $600 a pound, which was the agreed price, the $24,180 which was seized was only enough to purchase approximately forty-three pounds of marihuana. However, the same officer reiterated on cross-examination that Mendoza had represented to him that he wanted to purchase sixty pounds of marijuana at $600 a pound.

The officer speculated on direct examination that the insufficiency of the purchase money indicated that Mendoza and Weeks were trying to "rip [him] off." He also testified that when he viewed the money in the paper bag he thought at the time that the amount was sufficient to purchase sixty pounds of marihuana at $600 a pound. This testimony conflicted with his testimony on cross-examination in which he stated that the agreement was that he would receive the remainder of the purchase price in a second meeting with Mendoza and Weeks.

The confidential informant testified that he contacted the Drug Task Force after Mendoza phoned him and asked him to locate approximately fifty pounds of marihuana. He knew Mendoza because he had located large quantities of marihuana for Weeks and Mendoza on two prior occasions. The informant's understanding was that Weeks and Mendoza were from Indiana and came to the Rio Grande Valley to purchase marihuana. The informant testified that, after talking to an officer at the Force, the informant contacted Mendoza and Weeks, told them he found someone willing to sell sixty pounds of marihuana, and put them in contact with the undercover officers.

Trial was to the court, which ruled that the $24,180 was contraband subject to forfeiture under chapter 59 of the Texas Code of Criminal Procedure because it was intended to be used in the commission of the offense of illegal investment which is proscribed in chapter 481 of the Texas Health & Safety Code. *See* TEX.CODE CRIM.PROC.ANN. art. 59.01 et seq. (Vernon Supp.1993); TEX. HEALTH & SAFETY CODE § 481.126 (Vernon 1992). Weeks challenges the trial court's ruling by sixty-two points of error.[1]

■ In point of error F1 Weeks argues that the trial court reversibly erred when it

1. We note that many of appellant's points of error were vague and were not supported by argument. By example only, we mention that he made blanket legal and factual sufficiency challenges to the trial court's sixteen findings of fact and six conclusions of law, reproducing each and every finding by the trial court, and listing it as a "point of error." He also made a blanket challenge to the trial court's denial of each paragraph of his motion for new trial, again reproducing each of seventeen paragraphs from his motion for new trial, and listing them as "points of error." The argument in the body of his brief directly touched on only a few of these "points of error." Apparently, appellant was aware of the absence of argument when he inserted this "incorporation" statement at the end of his brief: "All the foregoing parts of this brief including each point of error, are incorporated here as if set out verbatim. Thus there has now thereby been argument under each of appellant's points of error."

We would like to bring some of the Texas Rules of Appellate Procedure to appellant's attention. TEX R.APP.P. 74(d) states in pertinent part that a "point [of error] is sufficient if it directs the attention of the appellate court to the error about which complaint is made." Furthermore, TEX.R.APP.P. 74(f) states that the argument in a brief *shall* include "(1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and authorities relied upon as may be requisite to maintain the point at issue." Appellant's methodology so obfuscates the essence of his valid arguments that we have exercised great restraint in not returning appellant's brief to him and asking him to rebrief pursuant to TEX. R.APP.P. 74(p).

forfeited the $24,180 to the Hidalgo County District Attorney's Office and not the State Treasury of Texas. This Court stated in *State v. One Thousand Dollars in United States Currency and One Pistol, Serial No. FC28277*, 865 S.W.2d 164 (Tex.App.—Corpus Christi, 1993), that, once a trial court determines that the property in question is subject to forfeiture, the trial court *must* forfeit the property to the attorney representing the state. *See* TEX.CODE CRIM.PROC.ANN. art. 59.-05(e) (Vernon Supp.1993). Point of error F1 is overruled.

■ Most of Weeks' challenges on appeal are attacks on the factual and legal sufficiency of the evidence. A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1990, no writ). In a factual sufficiency point of error, all of the evidence will be considered and the finding will be set aside only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Conclusions of law drawn from findings of fact are reviewed to determine their correctness. *Zieben*, 786 S.W.2d at 799.

■ In points of error C6, D2, D3, D6, E1, G11, and H1 Weeks challenges the legal and factual sufficiency of the evidence supporting the trial court's conclusion that the attorney representing the State had a "local agreement" with law enforcement agencies at the time of trial. However, chapter 59 of TEX.CODE CRIM.PROC.ANN. (Vernon Supp.

1993) does not require that the State have a "local agreement" with law enforcement agencies before the trial court can forfeit contraband to the attorney for the State. In *State v. One Thousand Dollars in United States Currency and One Pistol, Serial No. FC28277*, 865 S.W.2d 164 (Tex.App.—Corpus Christi, 1993), this Court held that a "local agreement" need not exist for the trial court to forfeit contraband to the attorney for the State. A "local agreement" only affects the method by which the attorney for the state administers the contraband.[2] TEX.CODE CRIM.PROC.ANN. art. 59.06(a) (Vernon Supp. 1993). Thus, the State was not required to present evidence of a "local agreement." Point of error D3 also challenges the trial court's forfeiture to the district attorney's office of all interest accumulated on the $24,-180. Article 59.08(b) states that interest earned on contraband deposited in an interest-bearing bank account is distributed in the same manner as the principal. TEX.CODE CRIM.PROC.ANN. art. 59.08(b) (Vernon Supp. 1993). Weeks' points of error C6, D2, D3, D6, E1, G11, and H1 are overruled.

Weeks argues in points of error G17, H7, H8 and I3 that the evidence was factually and legally insufficient to support the trial court's finding that he knowingly or intentionally financed or invested funds to further the commission of delivery of marihuana because Weeks was not aware of the content of the negotiations with the undercover officer. Sections 481.126(a) and 481.120(c) of the Health and Safety Code state that a person commits the offense of illegal expenditure or investment if the person *"knowingly or intentionally ...* finances or invests funds the person knows or believes are intended to further the commission of"* delivery of more than fifty pounds of marihuana.[3] TEX.

---

2. The attorney for the state administers the contraband pursuant to any local agreement with law enforcement agencies. If a local agreement has not been reached, the contraband is sold by public auction by the sheriff's office on the 75th day after final judgment of forfeiture. TEX CODE CRIM.PROC.ANN. art. 59.06(a) (Vernon Supp.1993).

3. § 481.126. Offense: Illegal Expenditure or Investment

(a) A person commits an offense if the person knowingly or intentionally:

(1) expends funds the person knows are derived from the commission of an offense under Section ... 481.120(c); or

(2) finances or invests funds the person knows or believes are intended to further the commission of an offense listed in Subdivision (1).

TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon 1992).

HEALTH & SAFETY CODE ANN. §§ 481.126(a) & 481.120(c) (Vernon 1992) (emphasis added).

■ It is undisputed that Weeks was not present to listen while Mendoza negotiated the agreed price with the undercover officer. However, it is also undisputed that, after the officer asked to see the money, Mendoza walked to the car and said something inaudible to Weeks, who walked to the back of the car and removed a paper bag containing $24,180 bundled in small denominations from the trunk. Weeks did not protest when Mendoza gave the money to the undercover agent. We believe that this is sufficient evidence to infer that Weeks knowingly and intentionally financed or invested the $24,180 to further the commission of delivery of marihuana. Weeks' points of error G17, H7, H8 and I3 are overruled.

[8, 9] In points of error G13, G14, H2, H3, H4, H6, H9, H10, I1, I2, and I4 Weeks challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that the $24,180 was intended as an investment to further the commission of *aggravated* (more than fifty pounds) delivery of marihuana because, at $600 a pound, the $24,180 would have purchased less than fifty pounds of marihuana.[4] *See* TEX.HEALTH & SAFETY CODE ANN. §§ 481.126(a) & 481.120(c) (Vernon 1992). Not all currency expended on controlled substances is subject to forfeiture. A defendant is guilty of illegal investment under § 481.126(a) of the Texas Controlled Substances Act only if the currency was intended to further the commission of an aggravated offense under the Act. *Id.* The question presented in this case, therefore, is whether the amount of money seized, or the amount of marihuana which Weeks was to purchase, determines whether the offense of delivery of marihuana is aggravated. We

believe that it is the amount of the marihuana which Weeks would have purchased, and not the amount of money actually seized, that determines whether the offense was aggravated within the meaning of the Act. In this case, the amount of marihuana to be delivered pursuant to the negotiated agreement was sixty pounds, and sixty pounds of marihuana were at the scene, available for purchase.

■ Furthermore, the illegal investment statute only requires that the investment be intended to *further* the commission of aggravated delivery of marihuana. TEX.HEALTH & SAFETY CODE ANN. § 481.126(a)(2) (Vernon 1992); *Munoz v. State*, 840 S.W.2d 69, 74 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Beck v. State*, 741 S.W.2d 516, 519 (Tex. App.—Corpus Christi 1987, pet. ref'd). The currency seized in this instance, $24,180, would certainly further a $36,000 purchase ($600 × 60 lbs.). In spite of the undercover officer's testimony on direct that Weeks attempted to "rip [him] off," the undercover officer testified on cross-examination that he agreed with Mendoza to have a subsequent meeting with him and Weeks in which he would receive the remainder of the purchase price. This constitutes evidence that the $24,180 was in fact only intended to *further* the commission of delivery of the sixty pounds of marihuana. We sustain the trial court's finding that the $24,180 was intended to be an illegal investment to further the commission of aggravated delivery of marihuana. Weeks' points of error G13, G14, H2, H3, H4, H6, H9, H10, I1, I2, and I4 are overruled.

■ Weeks argues under points of error G15, G16, and H5 that the evidence was factually and legally insufficient to support the trial court's finding that there was no

§ 481.120. Offense: Delivery of Marihuana
(a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally delivers marihuana.
   *    *    *    *    *    *
(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) and the amount of marihuana delivered is more than 50 pounds.
TEX.HEALTH & SAFETY CODE ANN. § 481.120 (Vernon 1992).

4. The "G-series" points of error are the product of a blanket challenge to the trial court's denial of each and every paragraph of appellant's motion for new trial. We therefore note that the standard of review of the challenges to the denial of the motion for new trial is that the trial court's discretion will not be disturbed on appeal absent a showing of a manifest abuse of discretion. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988).

evidence of a "final agreement" because the "negotiator's investor" only had money to buy less than fifty pounds of marihuana, and because the undercover officer never planned to deliver the marihuana. We find no language in TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon 1992) which supports the inference that a "final agreement" must be reached before the offense of illegal investment is complete. To the contrary, § 481.-126(a)(2) merely requires that Weeks invested or financed money to *further* the commission of delivery of marihuana. Just as an illegal investment conviction can be sustained without an actual transfer of funds, *see Rezapour v. State*, 817 S.W.2d 67, 68 (Tex.Crim. App.1991), so can it be sustained without actual delivery of a controlled substance. Weeks' points of error G15, G16, and H5 are overruled.

■■ In points of error B3, C1, C4, C5, C13, C15, C16, and D5 Weeks argues that the evidence was factually and legally insufficient to support the trial court's finding that the $24,180 was contraband and subject to seizure pursuant to chapter 59 of the Texas Code of Criminal Procedure. The definition of "contraband" includes any property used or intended to be used in the commission of a felony under Chapter 481 of the Texas Health and Safety Code.[5] TEX.CODE CRIM. PROC.ANN. art. 59.01(2)(B)(i) (Vernon Supp. 1993). Having overruled Weeks' various challenges to the trial court's finding that Weeks engaged in the offense of illegal investment, *see* TEX.HEALTH & SAFETY CODE ANN. § 481.126(a) (Vernon 1992), we affirm the trial court's finding that, by a preponderance of the evidence, the $24,180 in U.S. Currency was "contraband" within the meaning of article 59.01(2)(B)(i). Weeks' points of error B3, C1, C4, C5, C13, C15, C16, and D5 are overruled.

Points of error G1 through G10 lodge various broad and sweeping attacks against the trial court's denial of ten paragraphs of Weeks' motion for new trial, all of which address the sufficiency of the evidence supporting the trial court's final judgment and the sufficiency of the evidence supporting the trial court's refusal to grant Weeks' trial motions for directed verdict. Weeks does not complain of the absence of evidence supporting a particular element. Nor does he accompany the points of error with argument. However, to avoid waiver, we will treat these points of error as though they were attacks on the trial court's finding that the $24,180 was "contraband." We overruled this same challenge under points of error B3, C1, C4, C5, C13, C16 and D5, which were factual and legal insufficiency challenges. We therefore overrule points of error G1 through G10, which do not establish on appeal that the trial court abused its discretion in denying these ten paragraphs of Weeks' motion for new trial. *Champion Int'l Corp.*, 762 S.W.2d at 899.

■■ Weeks challenges in points of error B4, C3, and C12 the factual and legal sufficiency of the evidence supporting the trial court's finding that the seizure of the $24,180 was made pursuant to a lawful arrest, lawful search, and lawful search incident to arrest. A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person or objects immediately associated with the person being arrested. *Jones v. State*, 640 S.W.2d 918, 921 (Tex.Crim.App.1982). Article 59.03(b)(4) of the Texas Code of Criminal Procedure also provides that the seizure of property subject to forfeiture may be made without a warrant if the seizure is incident to a lawful arrest. TEX.CODE CRIM.PROC.ANN. art. 59.03(b)(4) (Vernon Supp.1993). Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and

---

5. **Art. 59.01. Definitions**
 In this chapter:
  (2) "Contraband" means property of any nature, including real, personal, tangible, or intangible, that is:
  ✻ ✻ ✻ ✻ ✻ ✻
  (B) used or intended to be used in the commission of:

(i) any felony under Chapter 481, Health and Safety Code;

✻ ✻ ✻ ✻ ✻ ✻

TEX CODE CRIM PROC ANN. art. 59.01(2)(B)(i) (Vernon Supp.1993).

prudent man to believe that a particular person has committed or is committing a crime. *Jones v. State,* 565 S.W.2d 934, 936 (Tex. Crim.App.1978).

■ Weeks was arrested and the bag of money was seized only after the undercover officer had negotiated the drug deal with Mendoza, given a sample of marihuana, and requested and received a "down payment" from Weeks. We find that these are sufficient facts and circumstances within the knowledge of the undercover officer to warrant a reasonable and prudent man to believe that Weeks was committing the crime of illegal investment. *Jones,* 565 S.W.2d at 936. Accordingly, probable cause to arrest existed and the arrest was valid. Since the arrest was lawful, the seizure made incident to the lawful arrest was also valid. *Jones,* 640 S.W.2d at 921; TEX.CODE CRIM.PROC.ANN. art. 59.03(b)(4) (Vernon Supp.1993). Weeks' points of error B4, C3, and C12 are overruled.

■ In point of error D4 Weeks argues that the evidence was factually and legally insufficient to support the trial court's conclusion of law that the costs of court in this case should be adjudged against Weeks. Article 59.05 of the Texas Code of Criminal Procedure provides that forfeiture hearings proceed to trial in the same manner as other civil cases. TEX.CODE CRIM.PROC.ANN. art. 59.05(b) (Vernon Supp.1993). TEX.R.CIV.P. 125 states that a party shall be liable for costs incurred by himself, and TEX.R.CIV.P. 131 states that a successful party to a suit shall recover from an adversary all costs incurred therein. Since the State was the successful party, Weeks was liable for costs of court at the trial court's discretion. Point of error D4 is overruled.

In points of error B1 and B2 Weeks argues that the trial court's judgment is not supported by its findings of fact "by the applicable standard" of "beyond a reasonable doubt" and "clear and convincing evidence." The burden of proof in a forfeiture proceeding pursuant to chapter 59 of the Texas Code of Criminal Procedure is "preponderance of the evidence." TEX.CODE CRIM.PROC.ANN. § 59.05(b) (Vernon Supp.1993). We find no argument or explanation that clarifies Weeks' assertion that the "beyond a reasonable doubt" and "clear and convincing evidence" standards apply to this case. Points of error B1 and B2 are overruled.

■ In points of error C14 and D1 Weeks argues that the evidence was factually and legally insufficient to support the trial court's finding that the interlocutory default judgment taken against Mendoza and the informant in this cause was a final default judgment in favor of the State and was incorporated into the trial court's findings of fact to the extent that the final judgment did not conflict with the final judgment in this cause. We find no argument in Weeks' brief supporting these points of error. Weeks, Mendoza, and the informant were named as parties in the initial forfeiture proceeding. The default judgments were taken against Mendoza and the informant because they failed to answer. They were interlocutory default judgments, however, because Weeks *did* answer, and all parties must have defaulted to impose a final default judgment against multiple parties. *See* TEX.R.CIV.P. 240. Once the proceeding against Weeks was complete, final default judgments could be rendered against Mendoza and the informant. Weeks has offered no explanation for his assertion that the evidence was factually and legally insufficient to support the imposition of a final default judgment against Mendoza and the informant, and we find no legal authority to support his argument. Points of error C14 and D1 are overruled.

In points of error C2, C7, C8, C9, C10 and C11 Weeks challenges the legal and factual sufficiency of the evidence supporting several of the trial court's findings of fact. In the interest of brevity, we summarize those findings of fact:

1. The contraband was seized in Hidalgo County, Texas on May 27, 1991.

2. Undercover narcotics investigators received information from a confidential informant that several male individuals were interested in purchasing fifty to sixty pounds of marihuana.

3. At 3:45 p.m. narcotics investigators assumed an undercover capacity as marihuana sellers in a reverse sting operation.

4. One undercover officer negotiated the sale of sixty pounds of marihuana at $600 a pound.

5. A sample of the marihuana was given to Mendoza; Mendoza walked to the car and spoke with Weeks; Weeks walked to the rear of the car, opened the trunk, removed a brown paper bag from a suitcase and handed it to Mendoza; Mendoza showed the contents of the bag to the undercover officer, who then gave the bust signal.

6. The informant had arranged for Weeks and Mendoza to purchase marihuana on two prior occasions.

Since this evidence was given at trial by the informant and the undercover officers, and no contradicting evidence was offered, we overrule points of error C2, C7, C8, C9, C10, and C11.

Weeks asserts in points of error A1 and A2 that the trial court's judgment in favor of appellee was not supported by the trial court's original findings of fact and conclusions of law. Having reviewed the judgment and the trial court's findings of fact and conclusions of law we find that this argument is without merit and overrule points of error A1 and A2.

Weeks argues in point of error G12 that the trial court erroneously denied his motion for new trial on the grounds that "[t]here is no lawful basis to support the witness' speculation as to 'a rip off.'" Since no argument accompanies this point of error and Weeks has not provided reference to pages in the record where this may be found, see Tex. R.App.P. 74(f), we will assume that Weeks is referring to the undercover officer's testimony that "[h]e thought that he was trying to rip me off." Weeks' speculation objection to this statement was overruled by the trial court. However, error, if any, was harmless, since Tex.R.App.P. 81(b)(1) provides that "[n]o judgment shall be reversed on appeal ... unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." Point of error G12 is overruled.

 In point of error H11 Weeks argues that the judgment of the trial court "should be reversed and rendered" because the "money should be awarded to Respondent Weeks as he is the money's only claimant." Weeks is not the only party claiming entitlement to the $24,180. The State of Texas also claims entitlement. We find that the $24,180 has been rightfully forfeited pursuant to chapter 59 of the Texas Code of Criminal Procedure. Tex.Code Crim.Proc.Ann. art. 59.01 et seq. (Vernon Supp.1993). Point of error H11 is overruled.

The judgment of the trial court is AFFIRMED.

NYE, Former Chief Justice, not participating.