$18,800 IN U.S. CURRENCY and One 1990 Nissan Automobile Model 240SX VIN JN1HS36POLW144462, Appellants,

v.

The STATE of Texas, Appellee.

No. 01–95–01182–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 5, 1997.

Greg Gladden, Houston, for Appellants.

Rikke Burke Graber, Houston, for Appellee.

Before O'CONNOR, HEDGES and HUTSON–DUNN,* JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a judgment of forfeiture. The trial court ordered $18,800 in U.S. currency forfeited to the Houston Police Department (70%), Harris County District Attorney's Office (Harris County Treasurer's Fund No. 5922, 27%), and Harris County Treasury Fund no. 5940 (three percent).[1] The trial court also ordered the Nissan 240SX forfeited to the State of Texas and awarded to the Houston Police Department. The cash was owned by and seized from Alexander Guzman; the car is owned by Tiffany Jones, the registered owner.

In three points of error, Jones, a respondent below, contends (1) the trial court erred when it denied her innocent owner defense; (2) the forfeiture was overwhelmingly disproportionate to her and violated due process; and (3) the forfeiture was punitive and did not serve the purposes for which the forfeiture statute was enacted. In three points of error, Guzman, the other respondent below, argues (1) the State failed to show a reasonable belief there was a substantial connection between the money and criminal activity; (2)

it was error to allow Officer Walker to give an expert opinion; and (3) the forfeiture judgment was based on unreliable and prejudicial evidence, i.e., a narcotics detection dog who was rewarded each time it made a positive alert. We affirm.

### A. The Facts

On July 5, 1994, Houston police arrested Guzman and charged him with possession with intent to deliver over 400 grams of cocaine. At the time of Guzman's arrest, he was driving the Nissan, and police found a kilo of cocaine in his waist band and the $18,800 at issue in a duffel bag in the rear of the car. On October 28, 1994, after pleading guilty, Guzman was sentenced to 20–years confinement and a fine of $1.00.

On August 3, 1994, the State filed its notice of seizure and intended forfeiture of the $18,800 and the Nissan. The cash and the car were seized based on the same violation for which Guzman was prosecuted, convicted, and sentenced. Guzman claimed the $18,800 in cash, but denied any ownership interest in the car. Jones claimed the Nissan.

Jones is a mail carrier for the U.S. Postal Service and has been since 1992. She has no history of felony convictions, drug convictions, or probation. She was not present at Guzman's arrest and has not been charged with any crime.

Officer Walker testified the Houston police received information from an informant that a black male known only as "Alex" was working the 6800 block of Luddington in southwest Houston dealing crack cocaine, driving a Nissan. Walker and other officers went out to the 6800 block and "set up" there. They saw "Alex" driving the Nissan that had been described to them by the informant. As Guzman approached the gates of the apartment complex the police had been told he frequented, Walker and his partner pulled in front of the Nissan, and a marked police car pulled up in back of the Nissan. Walker

---

* The Honorable D. Camille Hutson–Dunn, retired *Justice, Court of Appeals, First District of Texas at Houston, participating by assignment*

1. All forfeited funds are to be administered by both agencies and Harris County in compliance with their local agreement under TEX.CODE CRIM.P. art. 59.06(c) and audited in accordance with TEX.CODE CRIM.P. art. 59.06(g).

watched Guzman and saw him "stuffing something in his pants and moving around the car." The officers got out of their cars with their guns drawn and ordered Guzman to get out of the Nissan and lay down in the street. He complied. The police searched Guzman and found the kilo of cocaine; they also searched the Nissan.

Walker testified that Guzman said he had a recent "falling out" with his girlfriend, Jones, and she put Guzman out of the apartment they were sharing. At the time of his arrest, Guzman claimed the Nissan belonged to him. Walker testified that he found several receipts in the Nissan for repairs to the Nissan's transmission and air conditioning. The receipts showed that Guzman had paid for the repairs in cash. In the glove compartment of the Nissan, Walker found a traffic ticket issued to Guzman while he was driving the Nissan.

Other police officers found the $18,800 in the rear cargo area of the Nissan in a black duffel bag. Walker testified he asked Guzman where the money came from. According to Walker, Guzman told him "he had just sold a kilo of cocaine at the Fiesta Food Mart." Guzman also told Walker that he was selling drugs so he could get a place to live and some furniture.

Walker testified that "a canine was run" on the black duffel bag containing the $18,800. The canine gave a positive alert, consistent with what Walker had previously observed as a positive reaction to contraband, i.e., when the dog found contraband he became aggressive, tearing at the contraband and barking very loudly.

### B. The Law

Property that is contraband is subject to seizure and forfeiture under chapter 59 of the Texas Code of Criminal Procedure. TEX. CODE CRIM.P. art. 59.02(a). "Contraband" means property of any nature, including real, personal, tangible, or intangible, that is used or intended to be used in the commission of any felony under chapter 481 of the Texas Health and Safety Code, the Texas Controlled Substances Act. TEX.CODE CRIM.P. art. 59.01(2)(B)(i). The offense of "possession with intent to deliver more than 400

grams of cocaine" is a felony under the Controlled Substances Act. TEX.HEALTH & SAFETY CODE §§ 481.033(1)(D), 481.113.

In a forfeiture proceeding, the State must prove by a preponderance of the evidence the property seized is contraband and, therefore, the property is subject to forfeiture. *State v. $11,014,* 820 S.W.2d 783, 784 (Tex.1991); *1985 Cadillac Limousine v. State,* 835 S.W.2d 822, 825 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The State must show probable cause for seizing a person's property, where probable cause is a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *State v. $11,014,* 820 S.W.2d at 784; *$56,700 in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); *1985 Cadillac,* 835 S.W.2d at 825.

There is an "innocent owner" defense which provides an owner's interest in property may not be forfeited under chapter 59 if the owner: (1) acquired and perfected her interest before or during the act giving rise to the forfeiture; and (2) did not know or should not reasonably have known of the act giving rise to the forfeiture or that it was likely to occur at or before the time of acquiring and perfecting the interest. TEX. CODE CRIM.P. art. 59.02(c). The claimant making the innocent owner defense has the burden to prove it. *$9,050 v. State,* 874 S.W.2d 158, 163 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Mitchell v. State,* 819 S.W.2d 659, 661 (Tex.App.—El Paso 1991, no writ); *see also McDorman v. State,* 757 S.W.2d 905, 907 (Tex.App.—Eastland 1988, writ denied) (holding that under a predecessor statute, the burden was upon the owner of the property to be forfeited to prove the act precipitating forfeiture was committed without his knowledge or consent); *Gaston v. State,* 641 S.W.2d 261, 264 (Tex.App.—Houston [14th Dist.] 1982, no writ) (same).

### C. Jones's Points of Error

#### 1. *The innocent owner defense*

In point of error one, Jones insists the trial court erred when it denied her innocent own-

er defense. She maintains that she established this defense at trial with evidence of judicial notice of the record, including discovery admissions and interrogatories. Jones argues the State did not show a substantial connection between the property to be forfeited, the Nissan, and the criminal activity defined by the State, i.e., Guzman's conviction for possession of cocaine with intent to deliver.

We construe this point of error to be there is neither legal nor factually sufficient evidence to support the trial court's finding in its findings of facts that "The 1990 Nissan, Model 240SX VIN JN1HS36POLW144462 made the subject of this suit is contraband as defined by Tex.C.Crim.P. Article 29.01(2)(B)(I)," [2] or its oral denial on the record of the innocent owner defense raised by Jones.

■ We review the evidence to support the trial court's findings of fact by the same standards we use to review the evidence to support jury findings, that is, by applying the legal and factual sufficiency tests. *$24,180 v. State,* 865 S.W.2d 181, 185 (Tex.App.—Corpus Christi 1993, writ denied); *Pizzitola v. Galveston Cty. Cent. Appraisal Dist.,* 808 S.W.2d 244, 246 (Tex.App.—Houston [1st Dist.] 1991, no writ). If an appellant attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof, the appellant must demonstrate the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Pizzitola,* 808 S.W.2d at 246. In reviewing these "as a matter of law" points of error, we must first examine the record for evidence that supports the finding and ignore all evidence to the contrary. *Sterner,* 767 S.W.2d at 690; *Pizzitola,* 808 S.W.2d at 246–47. If no evidence supports the findings, only then do we look to see if the contrary

proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690; *Pizzitola,* 808 S.W.2d at 247. When an appellant argues there is "no evidence" to support an adverse finding to an issue on which she did not have the burden of proof, we consider only the evidence and inferences tending to support the trial court's judgment and disregard all evidence and inferences to the contrary. *State v. $11,014,* 820 S.W.2d at 784; *1985 Cadillac,* 835 S.W.2d at 825.

■ If an appellant challenges the "factual sufficiency" of the evidence to support an adverse finding, we must consider and weigh all the evidence, both that in support of and contrary to the challenged finding. *1985 Cadillac,* 835 S.W.2d at 825. We must uphold the finding unless it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *$24,180,* 865 S.W.2d at 185; *Pizzitola,* 808 S.W.2d at 247.

Jones's complaint about her "innocent owner" defense is a "matter of law" point because she had the burden of proof on it. There are two parts to the "innocent owner" defense. First, the owner must have acquired and perfected her interest before or during the act giving rise to the forfeiture. The parties have stipulated to Jones's ownership of the Nissan, so there is no dispute that she satisfied the first part of the defense.

Second, the owner must not have known or should not reasonably have known of the act giving rise to the forfeiture, in this case, Guzman's possession of, with intent to deliver, cocaine. We acknowledge the trial court agreed to take judicial notice of the papers filed in this civil case. Although Jones refers to "discovery admissions and interrogatories," they are not contained in the record.

**2.** The transcript does not contain any request for findings of facts and conclusions of law, but it does contain a document entitled "Findings of Fact and Conclusions of Law." There are two findings of fact:

    1. The $18,600 in U.S. Currency made the subject of this suit is contraband as defined by Tex.C.Crim.P. Article 59.01(2)(A)(I).

    2. The 1990 Nissan, Model 240SX VIN JN1HS36POLW144462 made the subject of

this suit is contraband as defined by Tex. C.Crim.P. Article 29.01(2)(B)(I).

The reference to article "59.01(2)(A)(I)" is probably incorrect because the felony in question does not fall under the Penal Code, but under the Health and Safety Code. The reference to "29.01" is probably incorrect and should probably be "59.01."

The only evidence before us is the transcript and the statement of facts from the hearings on May 24, 1995, and July 31, 1995. The only exhibits are those in connection with the May 24, 1995 hearing, containing largely affidavits from public employees, proving up the street value of the cocaine and the costs incurred in prosecuting the case against Guzman and in incarcerating him in the county jail and Newton County detention center. Although Jones denied in her sworn original answer the Nissan is contraband as defined in TEX.CODE CRIM.P. art. 59.01, nothing in this record shows she affirmatively asserted she had no knowledge of Guzman's criminal activities or should not have reasonably known of them.

■ Accordingly, there is no evidence in the record before us that Jones did not know or should not reasonably have known that Guzman was using her car for possession of cocaine with intent to deliver. The only evidence in the record concerning Jones consists of the facts that she is a postal worker; had shared an apartment with Guzman, but recently kicked him out; was not present at the time of his arrest; has not been charged in connection with his offense; and has no history of felony convictions or probations. This evidence is not probative to prove she did not know or should not have reasonably known about the offense that gave rise to the forfeiture of her car. *Compare with Mitchell*, 819 S.W.2d at 661–62 (owner established he neither knew nor should have known that his employee and a driver of his forfeited car possessed cocaine: he testified that he never knew her to use drugs and that he never used drugs; there was testimony of a zero tolerance drug policy at his company; there was no criminal record of either owner or driver; owner was not at scene of offense).

Accordingly, Jones did not establish her "innocent owner" defense as a matter of law. Because there is no evidence on the issue, we also overrule her factually insufficient challenge.

■ Jones's complaint that the State did not show a substantial connection between the forfeited Nissan and Guzman's criminal activity is a "no evidence" point because the State had the burden of proof on it. Looking only at the evidence in support of the finding the Nissan was contraband, we find that Walker's testimony shows an informant describing Guzman and the Nissan to the police and telling the police that Guzman was selling crack cocaine. This information was confirmed when Walker and other officers set up in the location mentioned by the informant. There is also the evidence of car repair receipts signed by Guzman, further indicating a connection between Guzman and the Nissan. When Walker and the other officers sandwiched Guzman in the Nissan between their vehicles, Walker noticed Guzman stuffing something in his pants and moving around the car. Although Walker believed Guzman may have had a gun, a search of Guzman produced a large amount of cocaine. Finally, Guzman stated to police that he had just completed a drug deal, the inference being that he had driven to the present location in the Nissan from the Fiesta Mart. This evidence is legally sufficient to establish a substantial connection between the Nissan and Guzman's criminal activity. *1985 Cadillac*, 835 S.W.2d at 825 (evidence showed it was more probable than not the limousine was instrumental in possession and abuse of cocaine: limousine used to transport appellant and others to a location to purchase cocaine; appellant and others partied in limousine and consumed cocaine; drugs and paraphernalia recovered from limousine).

Accordingly, we find the evidence legally sufficient to support the finding the Nissan was contraband, i.e., there was a substantial connection between the Nissan and Guzman's criminal activity. Nor is there any evidence disputing the nexus between the Nissan and Guzman's possession of cocaine with intent to deliver. Accordingly, we find the evidence factually sufficient to support a substantial connection between the two.

We overrule Jones's point of error one.

### 2. *Forfeiture violates due process and is punitive*

In Jones's point of error two, she contends the forfeiture of her Nissan is overwhelmingly disproportionate to her because she was not charged in the underlying indictment and

violates due process. In her point of error three, she argues that forfeiture is punitive to her and does not serve the purposes for which the forfeiture statute was enacted. She relies on five decisions of the U.S. Supreme Court: *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *Austin v. U.S.*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996); *U.S. v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Her reliance on *Ursery* and *One Assortment of 89 Firearms* is misplaced. The issue addressed by those cases is whether the imposition of an in rem civil forfeiture, after a defendant has already been acquitted or convicted and sentenced to imprisonment, a fine, or both, constitutes double jeopardy. *Ursery*, 518 U.S. at ——, 116 S.Ct. at 2149; *One Assortment of 89 Firearms*, 465 U.S. at 366, 104 S.Ct. at 1107. Jones has not been charged with, or acquitted, or convicted of any offense in connection with the forfeiture of the Nissan. The reasoning used in a double jeopardy analysis does not apply to her circumstances.

Nor does the holding in *Calero–Toledo* assist Jones. In *Calero–Toledo*, the Court recognized that it is difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent and, by analogy, the claim of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. 416 U.S. at 689–90, 94 S.Ct. at 2094–95. Nonetheless, the Court upheld the forfeiture, despite the owner's lack of knowledge of and uninvolvement in the criminal activity:

> But in this case appellee voluntarily entrusted the lessees with possession of the yacht, and no allegation has been made or proof offered that the company did all that it reasonably could do to avoid having its property put to an unlawful use.

416 U.S. at 690, 94 S.Ct. at 2095. *Accord Bennis*, 516 U.S. at 447, 116 S.Ct. at 998 (a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use). Even if Jones had provided evidence that she was an "innocent owner," *Calero–Toledo* provides no basis for relieving her from the forfeiture of the Nissan.

The Court in *Austin* found the forfeiture provisions of two federal statutes were subject to the limitations of the eighth amendment's excessive fines clause. 509 U.S. at 621, 113 S.Ct. at 2812. The Court did not decide whether the forfeitures in question were excessive, nor did it establish any factors for determining "excessiveness." These matters were remanded to the lower courts for their consideration. *Id.* There was no occasion in *Austin* to address the "innocent owner defense." *Bennis*, 516 U.S. at 451, 116 S.Ct. at 1000.

Despite the willingness of the Court in *Austin* to apply the excessive fines clause to forfeiture proceedings, *Bennis* holds that a state statute that does not protect an innocent owner against a forfeiture of property does not offend the due process clause of the fourteenth amendment or the takings clause of the fifth amendment. 516 U.S. at 442, 116 S.Ct. at 996. In *Bennis*, a husband and wife were joint owners of a car in which the husband engaged in sexual activity with a prostitute without the knowledge of his wife. 516 U.S. at 442, 116 S.Ct. at 996. A Michigan court ordered the car forfeited as a public nuisance with no offset for the innocent wife's interest. Among other things, the wife argued the holding in *Austin* "would be difficult to reconcile with any rule allowing truly innocent persons to be punished by civil forfeiture." *Bennis*, 516 U.S. at 451, 116 S.Ct. at 1000. While noting the Michigan statute was enforced through an equitable action in which the trial judge had discretion to consider alternatives to forfeiting the entire interest in the car, the Court upheld the Michigan statute and stated:

> We conclude today, as we concluded 75 years ago, that the cases authorizing ac-

tions of the kind at issue are "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced." 516 U.S. at 452, 116 S.Ct. at 1001.

Article 59.02 of the Texas Code of Criminal Procedure provides protection for the property of an "innocent owner" in forfeiture proceedings if the owner establishes that he or she is truly innocent. We have concluded there is no evidence in the record that establishes Jones was a truly innocent owner. Neither *Austin* nor *Bennis* mandates the Nissan be returned to her.

We overrule Jones's points of error two and three.

### D. Guzman's Points of Error

#### 1. *No substantial connection*

In point of error one, Guzman argues the trial court erred when it allowed the forfeiture of $18,800 because the State did not show a reasonable belief there was a substantial connection between the money and criminal activity. He maintains there is no direct evidence linking the money to manufacturing, delivering, selling, or possessing a controlled substance, and the "dog alert" and the testimony of Walker are insufficient to support the forfeiture of the $18,800. Guzman relies on *$2,067 v. State*, 745 S.W.2d 109 (Tex.App.—Fort Worth 1988, no writ), *$136,-205 (Johnson) v. State*, 848 S.W.2d 888 (Tex.App.—Houston [14th Dist.] 1993, no writ), *$11,014 v. State*, 828 S.W.2d 814 (Tex.App.—Houston [1st Dist.] 1992, no writ), and *$80,-631 v. State*, 861 S.W.2d 10 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

As we did with Jones's point of error one, we construe this point as a challenge to the legal and factual sufficiency of the evidence to support the trial court's finding in its findings of facts that, "The $18,800.00 in U.S. Currency made the subject of this suit is contraband as defined by Tex.C.Crim.P. Article 59.01(2)(A)(I)." Because the State has the burden of establishing the $18,800 is contraband, *State v. $11,014*, 820 S.W.2d at 784, we apply the standards for "no evidence" and "factually insufficient" points which we enumerated above in connection with Jones's point of error one.

One piece of evidence linking the money to criminal activity is the presence of the money in the same place where narcotics are found. Here, cocaine and the money were both located in the Nissan. Another piece of evidence linking the money to criminal activity is the "alert" of the trained narcotics dog. In a case where a narcotics dog made one alert on a cabinet containing money that was suspected of having been used in drug trafficking, the Fourteenth Court of Appeals stated:

> [T]he presence of money at the same location in which narcotics are found does not conclusively establish that the money is used in the commission of a felony, [but] it does, nonetheless, tend to demonstrate some evidence that the money was contraband. The positive alert by the detection dog on the safety deposit box, although tenuous, is more than a mere scintilla of evidence of a connection between the marijuana and the funds.

*$136,205 (Johnson)*, 848 S.W.2d at 890. *Accord State v. $11,014*, 820 S.W.2d at 785 (the alert of the dog to the suitcase, where the money was first placed, and to the filing cabinet, where the money was next placed, coupled with behavior of alleged drug courier, constitutes at least some evidence the money was derived from the sale and/or distribution of a controlled substance).

It is true that in *$80,631*, the court held the alert of the dog standing alone did not constitute evidence the currency was used in connection with a drug deal. 861 S.W.2d at 12. The dog alerted on a briefcase in the Porsche, but there were no drugs in the briefcase or the Porsche. Here, drugs and the money were found in the Nissan.

Walker testified that Guzman told him at the time of Guzman's arrest that he had "just" sold a kilo of cocaine. In State's Exhibit No. 1, an affidavit admitted into evidence, an investigator with the Harris County District Attorney's Special Crimes Bureau testified the wholesale value of a kilo of cocaine on the streets of Harris County was between $17,000 and $22,000.

In *$2,067*, 745 S.W.2d at 111, the Fort Worth Court of Appeals noted the fact

the forfeited property was found at, or near, the controlled substance did not establish the nexus between the property and the sale or commercial distribution of a controlled substance. There is more than that here. The evidence of the cocaine plus the $18,800 in the Nissan, coupled with Guzman's statement that he had just sold a kilo of cocaine and the investigator's affidavit the wholesale value of such cocaine was between $17,000 and $22,000 establishes the nexus between the offense of possession of cocaine with intent to deliver and the forfeited $18,800.

Accordingly, we find the evidence legally sufficient to support a finding the $18,800 was contraband. Nor is there any evidence to the contrary disputing the nexus between the $18,800 and Guzman's possession of cocaine with intent to deliver. Accordingly, we find the evidence factually sufficient to support a substantial connection between the two.

We overrule Guzman's point of error one.

### 2. Improper expert opinion

In point of error two, Guzman contends the trial court committed reversible error by overruling his objection to allowing Walker to give an expert opinion on a subject he was not an expert in, i.e., the "alert" of a trained drug detection dog.

Rule 702 of the Texas Rules of Civil Evidence, which was modeled on FED.R.EVID. 702, governs the admissibility of expert testimony. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 554 (Tex.1995). The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The rule encompasses not only *scientific* knowledge, but *specialized* knowledge. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 n. 8, 113 S.Ct. 2786, 2795 n. 8, 125 L.Ed.2d 469 (1993) (although case involved scientific evidence, Court noted that FED.R.EVID. 702 also applies to "techni-

cal, or other specialized knowledge"). If the trial court finds that the witness has a specialized skill, training, or other knowledge, and finds that his testimony will assist the trier of fact to understand the evidence or to determine a fact issue, then such testimony is admissible. *See Banda v. State,* 890 S.W.2d 42, 58–59 (Tex.Crim.App.1994) (referring to TEX.R.CRIM.EVID. 702). The admission of such testimony lies within the sound discretion of the trial court and will not be set aside absent a showing of abuse of that discretion. *United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30–31 (Tex.1997); *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996).

■ Expert testimony should be admitted only when it is helpful to the jury, and when the expert's knowledge and experience on a relevant issue are beyond that of an average juror. *United Blood Servs.,* 938 S.W.2d at 30 (testimony of experts must assist trier of fact); *Broders,* 924 S.W.2d at 153 (same); *ITT Commercial Fin. Corp. v. Riehn,* 796 S.W.2d 248, 250 (Tex.App.—Dallas 1990, no writ) (expert must possess higher degree of knowledge than an ordinary person or trier of fact); *see U.S. v. Buchanan,* 70 F.3d 818, 832 (5th Cir.1995) (narcotics agent may testify about significance of conduct or methods of operation unique to drug distribution business); *Beasley v. State,* 838 S.W.2d 695, 704 (Tex.App.—Dallas 1992, pet. ref'd) (expert testimony of police officer in use and distribution of controlled substances would assist jury to attain knowledge of illegal drug dealing); *State v. $11,014,* 820 S.W.2d at 785 (officer trained in the use of narcotics detection dogs; both officer and dog certified by the National Narcotic Detector Dog Association; officer assigned to the canine division for 2 1/2 years; officer testified that based on the dog's reaction, the money had been in recent close proximity to a controlled substance).

■ Testimony concerning the use of dogs to detect drugs and how a dog signals the presence of drugs is not the kind of information with which the average juror would be familiar. Accordingly, we hold that such specialized knowledge must be testified to by an expert.

When a trial court is faced with an offer of expert testimony on a *scientific* topic unfamiliar to lay jurors, the court's first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results. *E.I. du Pont de Nemours & Co.*, 923 S.W.2d at 556. Similarly, the trial court must also determine whether testimony on *specialized knowledge* is sufficiently reliable and relevant to help the jury in reaching accurate results. In determining the reliability of the testimony on specialized knowledge, one of the factors that a court may consider is the qualifications of the testifying expert. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

At the time of Guzman's arrest, Walker had been a Houston police officer for 11 years and assigned to the narcotics division for more than five years. Although Walker had seen canines alert on drugs many times, on voir dire he admitted that he had no training in working with drug detection dogs and no authorization to work drug detection dogs. He also stated that he did not know if the dog in question was certified to be a drug detection dog. He said: "I'm just relying on the experiences I had and [what] I observed the dog do."

We agree that it was error to allow Walker to testify as an expert about the "alert" of the drug detection dog. When evidence is erroneously admitted in a civil case, the appellant satisfies Tex.R.App.P. 81(b)(1) by showing the error in admitting the evidence was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992); *Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 467 (Tex. App.—Houston [1st Dist.] 1996, writ denied). The appellant is not required to prove that "but for" the admission of the evidence a different judgment would have resulted. *McCraw*, 828 S.W.2d at 758.[3]

Here, Guzman cannot show the admission of the evidence regarding the dog's "alert" probably resulted in the rendition of an improper judgment. Walker's testimony placed both the money and the cocaine in the Nissan, establishing proximity. The link is further strengthened by Walker's testimony that Guzman told him that he had "just" sold a kilo of cocaine and the affidavit of the investigator stating the wholesale value of cocaine was between $17,000 and $22,000, a range within which the $18,800 at issue fell.

We overrule Guzman's point of error two.

### 3. The unreliable and prejudiced narcotics detection dog

In point of error three, Guzman insists the trial court based its forfeiture judgment on unreliable and prejudicial evidence, i.e., the narcotics detection dog was biased and prejudiced in that each time the dog makes a positive alert to money, it is given a toy or reward.

Because of our disposition of Guzman's point of error two, it is unnecessary for us to address this point.

We affirm the judgment of forfeiture.

HUTSON–DUNN, J., concurring.

HUTSON–DUNN (Assigned), Justice, concurring.

I concur with the result reached by the majority and with the reasoning expressed, except with respect to point of error two.

An expert is one who possesses a higher degree of knowledge than an ordinary person or the trier of fact. *Potter v. Anthony Crane Rental of Texas, Inc.*, 896 S.W.2d 845, 851 (Tex.App.—Beaumont 1995, writ denied); *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 250 (Tex.App.—Dallas 1990, no writ); *see, e.g., Harris County Hosp. Dist. v.*

---

3. We note that the Supreme Court has given mixed signals on this issue. In *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995), the Supreme Court, citing *McCraw*, said the test was not "but for," but then described a successful challenge as requiring the appellant to show that the case "turns on" the evidence that was erroneously admitted or excluded. The "turns on" test is another name for the "but for" test. We resolve the conflict by relying on Tex. R.App.P. 81(b)(1), which requires the appellant to show that the error was reasonably calculated to cause and probably caused the rendition of an improper judgment. Rule 81(b)(1) is consistent with the *McCraw* "probable" test, not with *Alvarado's* "turns on" test.

*Estrada,* 872 S.W.2d 759, 762 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (non-physician nurse, even if not registered, who is familiar with standard of care at another similar hospital can qualify by experience to testify as medical expert).

Was Officer Walker an expert?

At the time of Guzman's arrest, Walker had been a Houston police officer for 10 years and had been assigned to the narcotics division for approximately five years. Walker had observed "very many" field tests for drugs. He had seen dogs "alert" on money on many occasions, including the canine in this particular case. He stated he was familiar with a dog's positive alert.

Officer Walker possessed a higher degree of knowledge concerning drug detecting dogs than an ordinary person or the trier of fact. I conclude that he was an expert and could properly testify concerning the "alert" of the dog. Accordingly, the trial court did not abuse his discretion when he admitted the testimony challenged by Guzman.

I would overrule point of error two on this basis.