**Claudine POTTER, Individually and on Behalf of her Deceased Husband, Arthur Joe Potter, and on Behalf of her Minor Daughter Melinda Devohn Potter, and Patrick Potter, Ruby Ann Potter and Lena Potter Warenskold, Appellants,**

v.

**ANTHONY CRANE RENTAL OF TEXAS, INC., Appellee.**

No. 09–93–293 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 2, 1995.

Decided April 13, 1995.

---

Bonnie Bratton, The Bratton Firm, Austin, for appellants.

John B. Geddie, William F. O'Rourke, Kroll & Tract, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

The wife and children of Joe Potter ("Appellants") sued Anthony Crane Rental of Texas, Inc. ("CRANE"), Cecil Price ("Price"), Seaport Pipe & Steel ("Seaport"), Ligon Nationwide, Inc. ("Ligon"), Bechtel Constructors Corporation ("Bechtel"), Bechtel Power Corporation ("Bechtel Power"), and Texas Utilities Company under the wrongful death statute on a theory of negligence. Seaport, Ligon, Bechtel, and Texas Utilities Company, among others, settled with Appellants prior to trial and were dismissed from this action with prejudice. Price was in the general employ of CRANE at the time of the incident giving rise to this action. All claims against Price were dismissed with prejudice following Appellants' voir dire examination; however, prior to Price's dismissal from the suit, the trial court held in its Amended Order of Partial Summary Judgement that Cecil Price was an employee of CRANE and that CRANE would be vicariously liable for the negligent conduct, if any, of its employee Cecil Price. The jury was instructed as follows: "When considering the negligence of Anthony Crane Rental of Texas, Inc., if any, do not consider the negligence of Cecil Price, if any; likewise, when considering the negligence of Cecil Price, if any, do not consider the negligence of Anthony Crane Rental of Texas, Inc., if any."

The case was submitted to the jury by way of a broad form question. Question Number 1 and the jury's responses were as follows:

Question No. 1:

Did the negligence, if any, of the persons named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

| | | |
|---|---|---|
| a. | Authur [sic] Joe Potter | No |
| b. | Seaport Pipe & Steel | Yes |
| c. | Anthony Crane Rental of Texas, Inc. | No |
| d. | Cecil Price | No |
| e. | Ligon Nationwide, Inc., Individually and d/b/a Ligon Transportation | No |
| f. | Bechtel Power | Yes |
| g. | Texas Utilities Co. | No |

After responding to this question, the jury sent a message to the Judge stating, "We have not found Anthony Crane or Cecil Price responsible to any degree. Are we required to answer questions 2–9?" The Judge instructed the jury that there was no need to continue, and the verdict was signed.

The jury found that the conduct of Bechtel Power and Seaport constituted negligence, which proximately caused Joe Potter's death.

The jury further found that there was no negligent conduct on the part of either CRANE or Cecil Price which proximately caused the death in question. Appellants filed a Motion for New Trial, which was denied. Appellants appeal only from that portion of the judgment based upon the jury's finding that Cecil Price was not negligent and/or that Cecil Price's conduct was not a proximate cause of Joe Potter's death.

## FACTS

Joe Potter died in December 1989 as a result of an accident involving the loading of surplus pipe onto a flat bed truck at the site of the DeCordova Power Plant construction project. Bechtel Power was the general contractor on the construction site. At least some of the craftsmen on the job site were employed by Bechtel Constructors.

Joe Potter, the deceased, as well as Joe Hudler, Joe Clark, LaVerne Arthurs, Cecil Price, James Young, Bruce Norris, Kit McAfee, and an unidentified truck driver, were all present at the construction site on the day of the incident in question. All were employees of Bechtel Constructors, with the exception of Price, McAfee, and the truck driver.

Pursuant to a contract between CRANE and Bechtel Power, CRANE provided crane operators to the DeCordova site. The contract called for the lease of a maintained and operated crane, rather than the lease of the crane alone. Cecil Price was the crane operator on the day in question. At the time of the accident, the construction project was in the process of winding down, and, according to testimony, no more than seven or eight Bechtel Constructors employees were on the whole job site. During the winding-down phase of the project, most of the employees' time was taken up with inventory of surplus tools and materials.

Joe Clark, boilermaker, confirmed in his testimony that the job was winding down, and that he and others were merely doing odd jobs. If any of the men were free, they automatically assisted in loading trucks, which were frequently hauling surplus material away from the site. Joe Hudler, carpenter, testified that, on the day of the incident, he and Joe Potter, carpenter, had been taking inventory and that Bruce Norris, the job superintendent, instructed both of them to go and help load pipe onto a truck. To help prepare the truck for loading, LaVerne Arthurs, pipefitter general foreman, cut the standards, which were the stakes placed on the side of the truck to hold the pipe in place. Joe Clark stated that a sledgehammer, or something similar, was used to hammer the ends of the standards in order to make them fit into the slots on the trailer. There were four pieces of pipe on each side acting as standards. All those present agree that, during the loading of the pipe onto the truck, Cecil Price was operating the crane, LaVerne Arthurs and Joe Clark were on the ground hooking the pipe to the crane, and Joe Hudler and Joe Potter were up in the truck bed unhooking the pipe for placement on the truck bed.

There was no meeting prior to loading the pipe, and there were no discussions between the crew regarding responsibilities, agreement on signals, the method of loading the pipe, or the segregation of the pipe for purposes of loading. However, because LaVerne Arthurs was a pipefitter foreman, he was looked upon as the leader.

The process began with the men stacking the larger pipe on the bottom layer with the idea of working their way up the stack until the smallest pipe was on the top; their concept of loading was to pyramid the pipe pieces. After four or five pieces of pipe had been placed on the truck to form the bottom row, the representative (Kit McAfee) of the buyer of the surplus pipe, along with Bruce Norris, the project superintendent for Bechtel, came up to where the loading was taking place and talked to one of the people helping with the loading process.

The record reveals that four witnesses testified that McAfee wanted the loading method changed. According to Joe Clark, Mr. McAfee, the pipe buyer, stated that "it didn't make any difference what size pipe was what. He wanted to try to get everything on one truck...." Joe Hudler testified that he remembered Kit McAfee coming up to the loading site after they had started loading

the pipe; McAfee took LaVerne Arthurs aside and argued with him about the loading process. After his discussion with McAfee, LaVerne Arthurs told the men that they were going to have to put the smaller pipe on the bottom. James Young, another worker at the site, also heard Kit McAfee ask that the method of loading the pipe be changed in order to allow room for more pipe to be placed on the truck. Laverne Arthurs testified that Kit McAfee suggested that they mix in the smaller pieces in order to get a maximum load out of it. To accomplish that task, the men altered their loading method and began loading the pipe like cord wood so that different sizes of pipe would fall into the cracks and crevices, thereby allowing for a larger load.

James Young testified that he saw the accident from the construction house, which was probably one hundred yards from the truck. He stated:

> I saw Joe and Joe on top of the truck and the pipe shifted and the stakes on the side of the truck gave way. The pipes started rolling off. Joe Hudler managed to hang onto a choker; and Joe Potter, a piece of pipe caught him and rolled him off the truck.

Joe Clark, who was standing on the ground right next to the truck when the accident happened, testified that Joe Potter managed to hold onto the choker for just a split second. "[The pipe] was rolling out from under [Joe Potter,] and he was kind of like a log roller going trying to stay up with it and a big piece rolled down from behind him and hit him ... in the back of the legs and yanked him off the choker." Mr. Clark went on to testify that the pipe rolled off the truck onto Joe Potter, causing his death.

Bechtel Power was the general contractor at the construction site at which Joe Potter was fatally injured. Expert testimony was offered by Appellants to the effect that the general contractor was ultimately responsible for overall safety at the construction project. Although not an employee of the general contractor on the project, Kit McAfee, a representative of Seaport, decided that all joints of pipe should be loaded on one truck so as to save the expense of requisitioning a second

vehicle. McAfee exercised direction and control pertaining to the manner and method by which the pipe was to be loaded; no one from Bechtel, not even Bruce Norris, the project superintendent, opposed McAfee's directions.

Appellants bring forth two points of error:

## POINTS OF ERROR

### Point of Error Number 1

The failure of the Jury to find that the conduct of Cecil Price was negligent and a proximate cause of the death of Joe Potter was so against the great weight and preponderance of the evidence as to be manifestly unjust.

### Point of Error Number 2

The Trial Court abused its discretion in admitting the testimony of Norman Sachnik, and in allowing the recorded conversation between Norman Sachnik and Plaintiffs' Counsel Louis Bratton, to be admitted and published to the Jury, because Appellee failed to show that Norman Sachnik was qualified to testify as an expert in this case and such error on the part of the Trial Court was reasonably likely to cause, and probably did cause the rendition of an improper judgment.

■ Where reversal is sought on the ground of insufficiency of evidence to support a jury finding or on the ground that a jury finding is against the great weight and preponderance of the evidence, these standards govern:

(a) The court of appeals must consider and weigh all of the evidence and should set aside the verdict *only* if it is so contrary to the overwhelming weight of the evidence as to be *clearly wrong and unjust;*

(b) The court is not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable. The court may not substitute its thought processes for those of the jury; and,

(c) The court must be prepared to detail the evidence relevant to the issues un-

der consideration and clearly state why the jury findings are factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust, why the findings shock the conscience, or why the findings clearly demonstrate bias. The Court must be able to state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

*Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The jury, in response to Question Number 1, determined that the death of Joe Potter was proximately caused by the negligence of Seaport and Bechtel Power. The jury considered conflicting evidence regarding the responsibilities of Price and the propriety of his conduct and concluded that the negligence, if any, of Price was not a proximate cause of Joe Potter's death. Appellants contend that if the conduct of Price did not meet a certain standard of care for a crane operator, then such alleged substandard performance would, of necessity, constitute negligent conduct which proximately caused Joe Potter's death.

■■■ Negligence requires that three elements be proven at trial: duty to another person; breach of that duty; and injury to the person to whom the duty is owed as a proximate result of the breach. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). The two elements of proximate cause are cause-in-fact and foreseeability. *Id.* The question of proximate cause is one of fact particularly within the province of a jury, and a jury finding on proximate cause will be set aside only in the most exceptional circumstances. *Farley v. M M Cattle Company,* 529 S.W.2d 751, 756 (Tex.1975); *Yap v. ANR Freight Systems, Inc.,* 789 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1990, no writ).

The record reflects that the evidence was heavily controverted as to which party was in charge of the project on the day of Joe Potter's death. Eight witnesses testified that Bechtel, through Bechtel agents Bob Norris or LaVerne Arthurs, was in charge of the project and was responsible for the overall safety of personnel. In fact, Bruce Norris, the project superintendent for Bechtel, stated unequivocally that he was in charge of the entire project. Four fact witnesses testified that Seaport, through its representative, Kit McAfee, the buyer of the pipe, had final authority regarding the manner and method of loading the pipe and made the decision to load the entirety of the pipe on one trailer, solely on the financial consideration of not paying for an additional truck, and without regard to safety considerations. Having heard the disputed evidence as to who was in charge of the project, the jury determined that both Bechtel Power and Seaport were in charge of the loading operation and that their acts and omissions were the cause-in-fact of Joe Potter's death. The jury specifically found that Price's actions did not cause the accident.

Appellants attempt to critique the conduct of Price by using certain standards cited in an Anthony Crane Safety Manual, which had not been published or adopted at the time that the cause of action arose. Testimony was elicited during trial from which Price's conduct, relative to the policies and procedures delineated in CRANE's safety manual, could be analyzed. Testimony was also provided by Joe Hudler as to the professionalism exercised by Price on the date of the incident. Specifically, Joe Hudler testified that, but for the competency and ability exhibited by Price in operating the crane at the time of the incident, he too may have been fatally injured.

Appellants further rely on industry standards pertaining to crane rigging, crane operator responsibilities, and material handling practices to support the erroneous proposition that Price was negligent. However, when discussing application of such industry standards, the expert testimony proffered by Appellants at times contained conflicting opinions concerning the appropriate methods of loading materials and acceptable standards applicable to crane operators in connection with the performance of a given lift.

Appellants rely heavily on the following statement provided by Price after the incident:

The only thing I can say is that I did have one short conversation with Joe Clark right before the accident took place. I told him it looked like an accident looking for a place to happen and, uh, we both commented we wouldn't want to drive down the highway beside this truck, for fear that it would fall off us.

Price testified at trial that, at no time during the actual loading of the pipe, did he foresee that the pipe would roll off the truck. Price specifically testified that the reference in the foregoing statement, pertaining to "an accident looking for a place to happen," related to the period of time when the load of pipe would be transported on the highway.

 Controverted trial issues are properly within the province of a jury if reasonable minds could differ as to the truth of the controlling facts. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). The jury's function as fact-finder was to weigh the credibility of the witnesses and to make a finding in regard to the issue of proximate cause.

 The jury was presented with sufficient evidence to find, and did so find, that the negligence of Bechtel Power and Seaport proximately caused the injury to Joe Potter. Based on the conflicting trial testimony regarding the propriety of the conduct of Price, it was within the sole province of the jury to reasonably conclude that the actions of Price were not a proximate cause of the death of Joe Potter.

For these reasons, Appellants' Point of Error Number 1 must be overruled.

Appellants urge in Point of Error 2 that the trial court abused its discretion by improperly admitting the testimony of the expert witness, Norman Sachnik.

Appellants contend that Sachnik lacked the education and experience to qualify as an expert even though Appellants themselves designated him as such on matters involving crane operations and procedures. Subsequent to Sachnik's designation by Appellants as an expert witness in their answers to interrogatories, Appellee's counsel deposed him. Appellants did not amend their discovery responses to reflect that Sachnik would no longer be considered as their expert.

Although they designated Sachnik as their expert, Appellants chose not to use him at trial. Instead, Appellee decided, in essence, to make him its expert and called him to testify at trial by way of deposition testimony. His professional qualifications were presented to the jury. Those qualifications include a Bachelor of Science degree in mechanical engineering from the University of Houston, a professional engineering (PE) license, and twenty-five years experience doing primarily engineering work. In addition, Sachnik testified that he had operated a crane, although he had never done so for a living. Both his deposition testimony and the exhibit admitted into evidence by the trial court reflect the fact that Sachnik possessed certain expertise relating to crane operations and procedures. His testimony was particularly damaging to Appellants' case, because he emphatically stated that the accident was Bechtel's, and not Price's fault.

Appellants do not object to Sachnik's actual expression of his opinions regarding who is at fault; they object to his being allowed to testify at all and urge that the trial court abused its discretion by allowing his deposition to be read into evidence. However, they cite no authority to support their contention.

 The trial court has discretion in determining if a witness is qualified to testify as an expert. This determination will not be disturbed on appeal unless there is a clear abuse of the trial court's discretion. *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied). Tex.R.Civ.Evid. 702. Although there are no definite guidelines for making the determination of whether an expert is qualified, the party seeking to use the witness's testimony must show that the "expert possesses a higher degree of knowledge than an ordinary person or the trier of fact." *James v. Hudgins,* 876 S.W.2d 418, 421 (Tex.App.— El Paso 1994, writ denied); *ITT Commercial Finance Corp. v. Riehn,* 796 S.W.2d 248, 251 (Tex.App.—Dallas 1990, no writ). It is not necessary for an expert to be a specialist in a particular branch of a field as long as the expert has knowledge and skills which are not possessed by people in general. "A wit-

ness who, by his knowledge, skill, experience, training or education, has specialized knowledge that will assist the trier of fact in understanding the evidence or in determining a fact in issue may express an opinion about the matter." *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex.App.—Corpus Christi 1990, no writ). The record shows that Sachnik possessed a higher degree of knowledge concerning cranes and methods for loading pipe, and, therefore, the threshold requirement for the presentation of an expert's opinion is satisfied.

The trial court abuses its discretion if the exercise of its power is "contrary to law or reason," as described in *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935 (Tex.App.—Austin 1987, no writ); if it misapplies the law to established facts, as recognized in *State v. Southwestern Bell Telephone Co.,* 526 S.W.2d 526, 528 (Tex.1975); or if it behaves in an arbitrary, capricious, or unreasonable manner. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

The trial court acted reasonably and within its discretion in admitting the testimony of Sachnik. TEX.R.CIV.EVID. 702. There is no evidence or authority to support the proposition that the trial court abused its discretion or that it behaved in an arbitrary and capricious manner.

Appellants' Point of Error Number 2 must be overruled.

The judgment of the trial court is affirmed.

AFFIRMED.