**AFFIRM; and Opinion Filed July 17, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01495-CV

**PANHANDLE STEEL ERECTORS, INC., Appellant**
**V.**
**LUIS CANTU, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-14032**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Brown

Appellant Panhandle Steel Erectors, Inc. (Panhandle) appeals from a final judgment rendered on a jury verdict in favor of appellee Luis Cantu in this negligence action. In three issues, Panhandle contends the evidence at trial was insufficient to prove the applicable standard of care, a breach of that standard, and proximate cause. In two additional issues, Panhandle asserts Cantu failed to obtain necessary jury findings to recover on his claim. For the following reasons, we affirm the trial court's final judgment.

### BACKGROUND

In July 2014, Luis Cantu began work for Commercial Coolants, Inc. d/b/a Design Air Systems (Design Air), an air conditioning company. He traveled with a Design Air crew to Amarillo to remove and replace air conditioning units on the roof of a Wal-Mart store. The units

varied in size, but were generally four to six feet in height, and sat on eight to twelve inch curbs atop the roof. There also were skylights "all around the roof" that were not protected by guardrails, covers, or fall protection grids.

Design Air hired Panhandle, a professional crane business, to supply the crane and crane operator for the project. Because the crane operator was making blind lifts (lifting units on the roof that he could not see from the crane), the project was more complicated and required a signalperson to direct the crane operator. Design Air employee Erick Torres served as the signalperson. Design Air supervisor Michael Newcomer told Torres, who stood near the edge of the roof, when it was time for the crane to lift a unit, and Torres then signaled down to the crane operator.

Cantu, along with his brother David and Freddie Favela, were Design Air helpers and, among other things, rigged the unit to the crane. The crane's rigging consisted of four nylon straps with shackles that hung down from the crane's hook, which was positioned over the unit. Newcomer and the helpers attached the shackles on the rigging to "pick points" near the corners of the unit. The crane lifted each unit twice: the first lift was approximately twelve to eighteen inches off the ground to allow Newcomer to pull electrical wiring from underneath the unit; the second lift was to remove the unit from the roof.

Members of the Design Air crew testified some of the units swayed as they were lifted. The amount of sway varied, and there was evidence that swaying could result from a number of factors including the crane's distance from the load, boom deflection,[1] the angle at which the boom was set, the load being improperly rigged or not centered, a cable being "out of plumb," the crane not being lined up parallel to the load, and wind. Because they knew the units might "wobble a lot," the helpers stabilized the units by holding them at their corners and side so they would not

---

[1] Deflection can occur as a load is being applied to a hook because the steel of the boom, the long arm of the crane, is designed to bend.

injure Newcomer and he could remove the electrical wiring "without pinching it and getting it caught." For the second lift, the helpers let go of the unit and moved back a few feet as the crane lifted the unit from the roof. Cantu testified he looked up to see which direction the unit was being moved off the roof. His brother David likewise testified that, when the crane lifted the unit off the roof, everyone let go, stepped "back off" two or three steps, and looked to see where the unit was moving so they could get out of the way.

The first days of the project, Panhandle provided a 40-ton 500E Grove crane operated by John Anderson. Cantu testified he observed Anderson walking on the roof with Newcomer checking the units that were going to be moved.

On Monday, July 23, 2014, Panhandle sent a larger 110-ton 90GS4 Tadano crane. Panhandle employee Rick Collier operated the crane. Another Panhandle employee, Erik Rodgers, accompanied Collier and helped ready the crane. According to Collier, Newcomer showed him the location of the units to be removed and Collier determined where to place the crane. Because Newcomer had a "flagman" on the roof, Rodgers served as a rigger on the ground, unhooking old units and hooking new ones.

Panhandle provided the rigging for the project. Rodgers testified Collier determined they would use four twenty-foot, two-inch nylons and four shackles. Collier testified that Newcomer asked for "some shackles that would fit," and they determined the rigging based on units that were on the ground. Newcomer did not remember talking with the crane operator about anything other than where the crane would be positioned. According to Newcomer, the crane operator chose the rigging; the first time Newcomer saw it was when it was attached to the crane up on the roof.

Panhandle also carried taglines on their truck. Taglines, which have a self-clipping shackle and can be attached to pick points along with rigging, allow a worker to stand away from a load being lifted and stabilize the load from a distance. Neither Collier nor Rodgers attached taglines

to the rigging or told Design Air employees that taglines were available. Nor did either Collier or Rodgers go up on the roof before lifting began. Newcomer testified that, based on his experience, the crane operator decides whether taglines are used.

On the third or fourth lift of the day, Cantu was positioned between a corner of a unit and a skylight. He took a few steps back as soon as the crane began lifting the unit off the roof and saw the unit "coming toward" him. There was no time to duck, so Cantu stepped back further. His heels hit the side of the skylight, and he fell backwards through the skylight and into the store below. Cantu suffered multiple injuries.

The jury charge asked if the negligence of Panhandle, Wal-Mart, Design Air, or Cantu proximately caused the occurrence in question.[2] The jury found in favor of Cantu, apportioning Design Air's liability at forty percent, Wal-Mart's liability at thirty-five percent, and Panhandle's liability at twenty-five percent, and awarded Cantu approximately $4.6 million in damages. The trial court subsequently rendered a final judgment against Panhandle awarding actual damages of $1,190,897.27. Panhandle filed objections to the judgment, a motion and supplemental motion for judgment notwithstanding the verdict, and a motion for new trial.[3] The trial court overruled the objections and denied the motions.

## NEGLIGENCE

To prevail on his negligence claim, Cantu had to prove (1) Panhandle owed him a legal duty, (2) Panhandle breached that duty, and (3) he suffered damages proximately caused by the breach. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). In three issues, Panhandle challenges the legal and factual sufficiency of the evidence on each element of Cantu's

---

[2] Although not discussed here, the jury also heard evidence regarding Design Air's failure to do what an employer of ordinary prudence would have done under the same or similar circumstances and Wal-Mart's failure, as a premises owner and occupier, to warn and make a condition reasonably safe.

[3] Panhandle also moved for directed verdict on no duty and no evidence grounds after Cantu rested his case, and the trial court denied the motion.

–4–

negligence claim against it. Specifically, Panhandle claims the evidence is legally and factually insufficient to establish (1) the standard of care and breach of that standard of care, (2) Panhandle's negligence was a proximate cause of Cantu's accident, and (3) Panhandle owed any duty to Cantu other than to operate the crane according to the standard of care.

When, as here, an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the adverse finding. *Exxon Corp. v. Emerald Oil & Gas. Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). In determining whether the evidence is legally sufficient, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005). We credit favorable evidence if reasonable jurors could do so, and disregard contrary evidence unless reasonable jurors could not. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

We will sustain a complaint that the evidence is legally insufficient when there is a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. If there is more than a scintilla of evidence supporting the jury's finding, the legal sufficiency challenge must fail. *Id.* There is more than a scintilla of evidence "when the evidence as a whole rises to a level enabling reasonable and fair-minded people to have different conclusions." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence. *Id.*

For a factual sufficiency review, we consider and weigh all the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1988). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819 (legal sufficiency review); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (factual sufficiency review). When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). We may not substitute our own judgment for that of the factfinder merely because we might reach a different result. *City of Keller*, 168 S.W.3d at 822–23; *Golden Eagle Archery*, 116 S.W.3d at 761.

*Standard of Care, Breach*

With respect to Panhandle, the charge instructed the jury that "negligence" meant failing to exercise ordinary care in crane operations and "ordinary care" meant that degree of care which would be used by a crane company of ordinary prudence under the same or similar circumstances. In its first issue, Panhandle contends there was no expert testimony, or any other evidence, of the standard of care applicable to Cantu's negligence claim or Panhandle's failure to provide that care. Alternatively, Panhandle asserts the evidence of the applicable standard and breach is factually insufficient to support the jury's verdict. Cantu responds that expert testimony from Panhandle employees Brandon Hillard, Collier, and Rodgers established Panhandle's duty to exercise ordinary care in crane operations included providing taglines with the crane's rigging under the same or similar circumstances and Panhandle negligently failed to do so.

Expert testimony is necessary when the alleged negligence is of such a nature that it is not within the experience of a layman. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). Pursuant to Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. A witness who has gained expertise through practical experience may be qualified as an expert. *See, e.g., Great Am. Ins. Co. v. Hamel*, 444 S.W.3d 780, 804–05 (Tex. App.—El Paso 2014), *rev'd on other grounds*, 525 S.W.3d 655 (Tex. 2017) (general contractor/inspector could testify as expert on water damage); *C.C. Carlton Indus., Ltd. v. Blanchard*, 311 S.W.3d 654, 658 (Tex. App.—Austin 2010, no pet.) (construction); *Potter v. Anthony Crane Rental of Tex., Inc.*, 896 S.W.2d 845, 851–52 (Tex. App.—Beaumont 1995, writ denied) (crane operations); *Walter Baxter Seed Co. v. Rivera*, 677 S.W.2d 241, 244 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (farming). Further, an expert need not use "magic words," such as "standard of care;" the substance and context of the expert's testimony will be determinative. *See, e.g., Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018); *cf. Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex. 1997) (expert testimony using "magic words" like "negligence" and "proximate cause" can constitute no evidence if it is conclusory; the substance of the testimony must be considered); *Schaefer v. Texas Employers Ins. Ass'n*, 612 S.W.2d 199, 202 (Tex. 1980).

Panhandle does not contest their employees' qualifications as crane operations experts,[4] but asserts they provided no testimony to establish the standard of care applicable to Panhandle or a breach of that standard. In part, those witnesses testified as follows:

---

[4] Hillard had worked for Panhandle for eighteen years and, before serving as Health and Safety Manager, served as a rigger, signalperson, and crane operator. He held certifications for Mobile Crane Trainer, Rigging Signal Person Trainer, Crane Inspector, and Crane Operator Practical Examiner. Hillard was familiar with the requirements for crane operator, rigger, and signalperson certifications and qualifications. He also was

- Hillard, Panhandle's Health and Safety Manager, testified he was responsible for all safety policies, OSHA compliance, and training for Panhandle's crane operators, signalpersons, and riggers. Panhandle required all of its crane operators to be both qualified and certified. Panhandle was the crane expert, and the crane operator's responsibility included taking into account, and being concerned about, the customer, the customer's employees, and others who might be affected by operations. Hillard was not on-site at the Wal-Mart, but was familiar with the process of lifting air conditioning units from roofs. Hillard knew Collier was performing blind lifts and had learned Cantu and others had been standing next to units and holding them as they were lifted. Hillard testified using a tagline would be a way to allow Cantu to control the unit without having to hold onto it or stand near a hazard like the skylight. Hillard agreed that using taglines under these circumstances should have been considered.

- Rodgers testified the crane operator is responsible for performing a job site analysis, deciding where to place the crane and how long the boom should be, and shutting down operations if need be. As a rigger, Rodgers looked to Collier for advice, but together they were responsible for determining which rigging to use. Panhandle kept taglines in their trucks. Rodgers testified a particular hazard near a unit presents a good reason to use a tagline so the crew can control the unit from a distance. Assuming there was just no way to avoid standing near the skylight, Rodgers would recommend using a tagline. If Collier had told him to include taglines in rigging up, Rodgers would have done so. Rodgers had worked at other jobsites where the crane operator told him to include taglines in rigging up. Rodgers recognized, but did not concern himself that, the Design Air crew was not using taglines. No one from Design Air asked for taglines, and Rodgers assumed there was a qualified rigger on the roof.

- Collier testified that, as crane operator, he was charged with conducting crane operations safely, and Design Air relied on him to do so.[5] He had the right to shut down operations at any time, including for safety concerns. Panhandle provided the rigging for the job, and he and Rodgers visually inspected the rigging. As crane operator, taglines made a difference to Collier because they allowed a crew to stand away from a unit and control it from a distance. Taglines were needed for some lifts, but, according to Collier, the people handling the load have to decide whether to use taglines. When he was unable to see a lift, he relied on a signalperson to make those calls and did not concern himself with whether taglines were used. However, if he was able to see people getting "really close" to a unit he was raising and saw an opportunity to move those people back through use of a tagline, he would advise using a tagline because it was the safer thing to do. Collier testified it "maybe" would make a difference whether taglines were used up on the roof.

---

familiar with the process of lifting air conditioning units from roofs. Rodgers was a certified and OSHA-qualified rigger/signalperson and testified to the expertise of qualified and certified riggers and signalpersons, which included knowing a crane's operations and limits. Collier had worked as crane operator for about ten years and received his certification from West Texas A&M University. He also was a certified rigger and signalperson and an OSHA-qualified crane operator, which required him to demonstrate his knowledge through written and practical testing.

[5] In its reply brief, Panhandle asserts Design Air was liable for crane operations based on the "Design-Panhandle" contract. This "contract" was a field ticket with an indemnity provision on the back that Panhandle provided to Design Air after the work was performed. Cantu was not a party to any agreement between Panhandle and Design Air, and Panhandle does not show how the provisions on the field ticket negate any duty owed by Panhandle to Cantu.

The evidence shows Collier knew Design Air relied on his knowledge and skill to conduct the crane operations safely and he should have been concerned about everyone under the crane's boom. He was conducting blind lifts of large units from a roof that also contained a number of unprotected skylights. He, along with the other Panhandle employees, knew that, for a number of reasons, loads are apt to sway as they are lifted. And, in this case, the Design Air crew was holding onto the units during a portion of the lift to steady them. Under such circumstances, Hillard agreed taglines should have been considered, Rodgers agreed taglines should have been used if there was no way to avoid standing near a skylight, and Collier agreed using taglines was the safer practice. Considering the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support it, we conclude these witnesses' expert testimony constitutes more than a scintilla of evidence that including taglines with the crane's rigging fell within the standard of care owed by Panhandle in performing its crane operations.

There also is more than a scintilla of evidence that Panhandle breached the standard of care. Although they carried taglines on the truck, neither Collier nor Rodgers attached them to the rigging or even evaluated whether they should be used by assessing the conditions and potential hazards on the roof. They did not go up to the roof or discuss the conditions with Newcomer. Instead, Collier disclaimed responsibility for the safety of the crew on the roof and testified he relied on Design Air to make any decision about taglines. Rodgers, likewise, testified he did not concern himself with the fact the Design Air crew was not using taglines. Considering the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support it, we also conclude the evidence that Panhandle, despite its responsibility to conduct safe crane operations, breached its duty to do so when its employees failed to incorporate taglines with the crane's rigging.

Panhandle directs us to evidence, including testimony by both Panhandle and Design Air employees, that Design Air provided its own employees to rig the units on the roof and was responsible for all aspects of the rooftop work, including the rigging process. The jury, however, was presented with the conflicts in the evidence and was free to believe some witnesses, disbelieve others, and resolve inconsistencies in the testimony of any witness. *See McGalliard*, 722 S.W.2d at 697. Viewing the evidence in the light most favorable to Cantu, we conclude reasonable jurors could find Panhandle acted negligently through its employees, who should have provided the taglines with the crane's rigging. Further, considering all of the evidence, we conclude the jury's finding that Panhandle acted negligently is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Cain*, 709 S.W.2d at 176. Because we conclude the evidence is legally and factually sufficient to support the jury's finding, we overrule Panhandle's first issue.

*Causation*

In its second issue, Panhandle contends the evidence is legally and factually insufficient to support the jury's finding that Panhandle's negligence was a proximate cause of the accident. Specifically, Panhandle maintains there is no evidence of what "caused the unit to move toward Cantu, if in fact it did" or that Panhandle did or failed to do anything that proximately caused the accident.

Proximate cause consists of cause in fact and foreseeability. *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). It may be established by either direct evidence or circumstantial evidence and reasonable inferences drawn from that evidence, but cannot be established by mere conjecture, guess, or speculation. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992).

Cause in fact requires proof the negligent act or omission was a substantial factor in bringing about the harm and, without which, the harm would not have occurred. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016); *HMC Hotel Props. II Ltd. Partnership v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014). Conduct amounts to a substantial factor if it would lead reasonable people to regard it as a cause. *See Bostic v. Ga.-Pac. Corp.*, 439 S.W.3d 332, 337 (Tex. 2014). The "but-for" element of proximate cause requires only that "it is more probable than not that but for [the defendant's] conduct, the accident would not have occurred." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex. 1987). The defendant's negligent act or omission need not be the sole cause of the injury so long as it is a substantial factor in bringing about the harm. *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 664 (Tex. App.—Dallas 2018, pet. granted, aff'd as modified w.r.m.) (citing *Havner*, 825 S.W.2d at 459). It is sufficient to prove that the greater probability is that the defendant's conduct, alone or in contribution with others, was the cause of the harm. *Id.* We review whether there is any evidence from which reasonable minds could draw an inference that the defendant's negligent act caused the plaintiff's injury, and "[w]hether other possible inferences may be drawn from the evidence is not the relevant inquiry." *Id.*

To prove foreseeability, a plaintiff must establish that "a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Stanfield*, 494 S.W.3d at 97 (quoting *Doe*, 907 S.W.2d at 478). It is not necessary for the particular accident complained of, or the precise manner in which the injury occurred, to be foreseeable. *See Doe*, 907 S.W.2d at 478. All that is required is the injury be of a general character that might be reasonably contemplated as a result of the defendant's conduct. *Id.*; *Bishop*, 553 S.W.3d at 664. Foreseeability should be measured in the light of common experience applied to human conduct. *Doe*, 907 S.W.2d at 478.

When a lay person's general experience and common sense will not enable that person to determine causation, expert testimony is required. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006); *Coastal Tankship U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). However, lay witness testimony may establish causation when "a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (citations omitted); *see Guevera v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) ("[N]on-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence."); *Anderson*, 87 S.W.3d at 603.

The evidence shows the project required Newcomer to remove electrical wiring from the units, and the helpers stood right next to and held the units to steady them, only releasing the units as Collier lifted them from the roof. Taglines were available and, if attached with the crane's rigging, would have allowed the crew to control the units while standing away from both the units and skylights in close proximity to the units. Taglines were not used, and, on one lift, Cantu stepped back to avoid a unit he observed swaying towards him and fell through a skylight directly behind him. We conclude from the sequence of events presented to the jury, it could properly infer, both from the testimony of lay witnesses, including Cantu, and the expert testimony of Panhandle employees that the negligent failure to include taglines with the crane's rigging was a substantial factor in bringing about Cantu's fall and his resulting injuries. The lack of taglines also was a "but-for" cause; Cantu would not have fallen backwards through the skylight if he had been able to control the unit from a distance with a tagline.

As Panhandle points out, there was evidence that units can sway due to a number of different reasons and there was no evidence showing why the unit moved toward Cantu.[6] However, Cantu need not prove the failure to provide taglines was the sole cause of harm. *See Bishop*, 553 S.W.3d at 664. He simply had to prove, and the jury was free to believe, Panhandle's negligence was one cause in a sequence or combination of causes.[7] *See, e.g., Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). Viewing the evidence in the light most favorable to Cantu and disregarding all contrary evidence because reasonable jurors could, more than a scintilla of evidence exists that the failure to include taglines with the crane's rigging was a cause in fact of Cantu's fall and resulting injuries.

The jury also heard evidence showing "a person of ordinary intelligence should have anticipated the danger created" by Panhandle's negligent failure to provide taglines for the lift. *See Stanfield*, 494 S.W.3d at 97. Indeed, Collier described taglines as a safer practice and testified, had he seen someone trying to control the unit by physically holding it, he would have told them to use taglines. It was foreseeable to Panhandle's employees that a crew member positioned in close proximity to skylights could be injured while trying to stabilize the large units by hand as they were lifted by a crane. Viewing the evidence in the light most favorable to Cantu and disregarding all contrary evidence because reasonable jurors could, more than a scintilla of evidence exists to prove Panhandle's negligence proximately caused Cantu's fall and resulting injuries.

Further, the issue of proximate cause is one of fact to be determined by the jury, and, considering the entire record, the jury's finding that Panhandle's negligence was the proximate

---

[6] More specifically, Panhandle contends there was no evidence showing why the unit moved toward Cantu "if in fact it did." The jury, however, was free to infer the unit did in fact move toward Cantu from his testimony that he saw the unit move toward him.

[7] Indeed, the jury believed there was evidence showing Design Air also was negligent and its negligence also proximately caused the occurrence, apportioning Design Air's liability at forty percent.

–13–

cause of Cantu's fall and resulting injuries is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Cain*, 709 S.W.2d at 176. Because we conclude the evidence is legally and factually sufficient to support the jury's finding, we overrule Panhandle's second issue.

*Other Duties*

In its third issue, Panhandle acknowledges it owed Cantu a duty to operate the crane in a safe manner and perform its work in a reasonably safe manner so as not to present an unreasonable degree of potential harm or danger to others, but contends the evidence is legally and factually insufficient to establish Panhandle owed Cantu any duty related to several other theories of negligence alleged in Cantu's second amended petition.[8] As to Panhandle, however, the trial court's jury charge specifically and narrowly limited "negligence" to "failing to exercise ordinary care in crane operations." The trial court's negligence instruction was substantially similar to the proposed instruction submitted by Panhandle, which limited "negligence" with respect to Panhandle to "failing to exercise ordinary care in operating the crane." We presume the jury followed the trial court's instruction unless the record indicates otherwise. *See, e.g., Columbia Rio Grande Healthcare L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009); *Golden Eagle Archery*, 116 S.W.3d at 771. Here, the record does not demonstrate the jury's verdict was based on any theory other than that submitted to the jury. Accordingly, we need not address whether Panhandle owed duties to Cantu other than to exercise ordinary care in its crane operations. *See, e.g., Diaz v. D.R. Wright Enters., Inc.*, No. 05-17-00172-CV, 2018 WL 3484227, at *5 n.4 (Tex. App.—Dallas Jul.

---

[8] The petition alleged Panhandle also was negligent in: 1) allowing untrained and inexperienced individuals to act as signalmen and riggers on the Wal-Mart roof and failing to check on the qualifications of those individuals; 2) failing to conduct a pre-lift safety meeting on the day of the incident to go over proper procedures for removing the units; (3) failing to conduct a job safety analysis on or before the day of the incident to go over the safety hazards and means to avoid the hazards when removing the units; and (4) failing to supervise the individuals on the roof concerning proper crane, rigging and signaling operation.

19, 2018, no pet.); *see also* TEX. R. APP. P. 47.1 (opinion should be as brief as practicable and address issues necessary to disposition of appeal). We overrule Panhandle's third issue.

*Jury Charge*

In its fourth and fifth issues, Panhandle contends that, instead of the broad-form negligence question submitted to the jury, Cantu should have obtained separate jury findings on control, premises liability, negligent supervision, and respondeat superior consistent with each allegation of negligence asserted in Cantu's second amended petition. Citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000), Panhandle argues the broad-form question erroneously allowed the jury to reach its liability finding on theories that Cantu's injuries "resulted from Panhandle's failure to control or supervise [Design Air's] employees' activity on the rooftop worksite." And, according to Panhandle, those theories are unsupported by legally sufficient evidence and are therefore, invalid.

Trial courts have broad discretion in formulating a charge to submit disputed issues to the jury. *See Varme v. Gordon*, 881 S.W.2d 877, 881 (Tex. App.—Houston [14th Dist.] 1994, writ denied). We review jury charge error for an abuse of discretion. *Webb v. Glenbrook Owners Ass'n Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The rules of civil procedure require a trial court to submit a cause upon broad form questions when feasible and submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. Broad form is clearly the preferred method of submission, but, "when the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy by avoiding the need for a new trial when the basis for liability cannot be determined." *Casteel*, 22 S.W.3d at 390

–15–

(concluding that broad-form liability question incorporating thirteen separate theories of recovery, five of which were legally unavailable, was harmful and a new trial was required because it was impossible to determine if verdict based on invalid theory); *see also Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.2d 533, 535–36 (Tex. 2012) (per curiam).

To preserve error in the charge, an objecting party must present a complaint to the trial court that distinctly designates the error and grounds for the objection. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 272, 274; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007). Objections to the charge must comport with the arguments made on appeal. *See Cont'l Cas. Co v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g). If the objection at trial is not the same as the complaint on appeal, the issue has not been preserved for review. *Id*. A party also waives claimed error in the charge when it invites the error by proposing submission of a substantially similar charge to the jury. *See Haler v. Boyington Capital Group, Inc.*, 411 S.W.3d 631, 637 (Tex. App.—Dallas 2013, pet. denied).

The trial court submitted the following broad-form question on negligence:

Did the negligence, if any, of the persons or entities named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

a. Panhandle Steel     _____
b. Walmart     _____
c. Design Air     _____
d. Cantu     _____.

However, the charge also properly defined "negligence" as to Panhandle as "failing to exercise ordinary care in crane operations." As discussed above, Panhandle tendered a substantially similar definition in its proposed jury charge. And, citing to the pattern jury charge, Panhandle's proposed

jury charge also contained a substantially similar broad-from question.[9] *See Tex. Pattern Jury Charges: General Negligence, Intentional Torts, and Worker's Compensation* PJC 4.1 (2016). During the charge conference, however, Panhandle objected to the question on the grounds "there was no evidence that it proximately caused Cantu's injuries." Panhandle also objected that there should be "a series of one, two, three, four, five, six, seven, eight, nine specific questions in line with Plaintiff's specific allegations of negligence in its second amended petition . . . because . . . when you have claims that no duty exists, that a separate question needs to be submitted for each specific claim, so that the appellate court is able to discern which claim a jury decided liability was based on and which it did not." The trial court overruled the objections.

Assuming without deciding that Panhandle's broad objection was sufficiently specific to inform the trial court of its complaint, comported with its argument on appeal that any specific theories of negligence were unsupported by legally sufficient evidence, and was sufficient to avoid invitation of error in light of its own proposed jury question, we nevertheless conclude there was no *Casteel* error in submission of the broad form jury question. Instead, the charge expressly limited the jury to the one negligence theory at issue during trial – whether Panhandle failed to exercise ordinary care in performing its crane operations. *Compare Benge v. Williams*, 548 S.W.3d 466, 476 (Tex. 2018) (supreme court found *Casteel*-like error when jury was not instructed to disregard an allegation of medical negligence the plaintiff had disclaimed). As discussed above, the jury's finding on that theory was supported by legally and factually sufficient evidence. Cantu did not argue, or introduce evidence, to support a claim resulting "from Panhandle's failure to

---

[9] Did the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

1. Panhandle Steel Erectors, Inc.
2. Luis Cantu
3. Wal-Mart Stores Texas, LLC
4. Wal-Mart Stores, Inc.
4. Wal-Mart Realty Company
6. Commercial Coolants, Inc. s/b/a Design Air Systems.

–17–

control or supervise [Design Air's] employees' activity on the rooftop worksite," a premises liability claim, or a negligent supervision claim.[10] Accordingly, the trial court did not err by not submitting additional questions addressing control, premises liability, negligent supervision or respondeat superior. We overrule Panhandle's fourth and fifth issues.

We affirm the trial court's final judgment.

/Ada Brown/
ADA BROWN
JUSTICE

171495F.P05

---

[10] In its brief, Panhandle also complains a respondeat superior theory was improperly embedded in the broad form question because Cantu failed to obtain separate findings of negligence as to Panhandle's employees. Panhandle did not object on this basis in the trial court and, instead, submitted a proposed question asking only whether "Panhandle" was negligent. Accordingly, Panhandle has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 272, 274; *Bishop*, 553 S.W.3d at 674–75. Further, an employer is vicariously liable for its employee's negligent acts if those acts are within the course and scope of the employee's employment. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018); *Goodyear Tire & Rubber Co v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). The evidence at trial established that both Collier and Rodgers were Panhandle employees acting within the course and scope of their employment, and Panhandle never disputed that evidence.

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PANHANDLE STEEL ERECTORS, INC., Appellant

No. 05-17-01495-CV     V.

LUIS CANTU, Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-14032.
Opinion delivered by Justice Brown; Justices Bridges and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee LUIS CANTU recover his costs of this appeal from appellant PANHANDLE STEEL ERECTORS, INC.

Judgment entered this 17th day of July, 2019.